## DOMAN v CITY OF GROSSE POINTE FARMS

Docket Nos. 93362, 96232. Submitted December 2, 1987, at Detroit.
    Decided August 15, 1988. Leave to appeal applied for.

Robert A. Doman brought an action in the Wayne Circuit Court
against the City of Grosse Pointe Farms, his former employer,
alleging that the termination of his employment following a
six-month leave of absence for a mental disorder violated the
Michigan Handicappers' Civil Rights Act. The trial court,
Henry J. Szymanski, J., denied a motion for summary disposi-
tion brought by defendant and, following a bench trial, issued a
judgment awarding damages to plaintiff. The court subse-
quently amended the judgment to award attorney fees to
plaintiff. Appeals were taken by defendant from the original
judgment and the amended judgment.

The Court of Appeals consolidated the appeals and *held:*

The Michigan Handicappers' Civil Rights Act provides that
opportunities to obtain employment must be extended without
discrimination where the applicant's disability is unrelated to
his ability to perform the job. Coverage under the act for an
employee's or job applicant's handicap involving a mental
characteristic is limited to mental retardation, which is signifi-
cantly subaverage general intellectual functioning, and to a
mentally ill restored condition, which is mental health that is
either normal or stabilized with medication. In this case, at the
time plaintiff's employment was terminated, his mental health
was neither normal nor stabilized with medication. Thus, he
cannot claim the protection of the Michigan Handicappers'
Civil Rights Act and the trial court should have granted
summary disposition in favor of defendant based on plaintiff's
failure to state a claim on which relief can be granted.

Reversed.

1. Civil Rights — Handicappers — Employment.

The Michigan Handicappers' Civil Rights Act provides that op-

### References

Am Jur 2d, Job Discrimination §§ 111 *et seq.*

Construction and effect of state legislation forbidding job discrimi-
nation on account of physical handicap. 90 ALR3d 393.

portunities to obtain employment must be extended without discrimination where the applicant's disability is unrelated to his ability to perform the job (MCL 37.1102[1], 37.1103[b][i]; MSA 3.550[102][1], 3.550[103][b][i]).

2. CIVIL RIGHTS — HANDICAPPERS — ACTIONS.

A plaintiff employee or job applicant, to recover under the Michigan Handicappers' Civil Rights Act, must allege and prove that: (1) he is "handicapped" as defined in the act; (2) the handicap is unrelated to his ability to perform the duties of a particular job; and (3) he has been discriminated against in one of the ways set forth in the act (MCL 37.1202; MSA 3.550[202]).

3. CIVIL RIGHTS — HANDICAPPERS — "HANDICAP" — "MENTAL CHAR-
ACTERISTIC".

The Michigan Handicappers' Civil Rights Act's definition of "handicap" includes a determinable mental characteristic or a history of the characteristic resulting from disease, injury, congenital condition of birth, or functional disorder; the act limits coverage for mental characteristics to mental retardation, which is significantly subaverage general intellectual functioning, and to a mentally ill restored condition, which is mental health that is either normal or stabilized with medication (MCL 37.1103[b] and [d]; MSA 3.550[104][b] and [d]).

*Charles R. King* and *George A. Jones,* for plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Timothy H. Howlett* and *Jon R. Steiger*), for defendant.

Before: SULLIVAN, P.J., and CYNAR and R. J. TAYLOR,* JJ.

R. J. TAYLOR, J. This appeal involves a suit brought under the Michigan Handicappers' Civil Rights Act (MHCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* Plaintiff alleged that the defendant city violated the MHCRA when it terminated him from employment as a laborer with its Department of Public Works because he was handi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

capped as a result of mental illness. In August, 1984, and May, 1986, the Wayne Circuit Court denied defendant's pretrial motions for summary disposition in which defendant argued that plaintiff did not fall within the category of persons protected by the MHCRA because his condition was not "mentally ill restored." Following a bench trial in May, 1986, a judgment of $90,000 in damages was entered in plaintiff's favor. In September, 1986, the court amended the judgment to award plaintiff an additional $54,700 in attorney fees. Defendant appeals from the foregoing orders and judgment, arguing that the circuit court made numerous errors in its application of the law.

We agree with defendant that plaintiff does not fall within the category of persons protected by the MHCRA and, accordingly, reverse the judgment and orders of the circuit court. Our ruling that plaintiff is not covered by the MHCRA makes it unnecessary to address any of defendant's other arguments on appeal.

Plaintiff began full-time work with defendant's Department of Public Works in 1973. His duties included rubbish collection, park maintenance and driving maintenance vehicles. There was conflicting evidence at trial as to his adjustment at work. In a memorandum to the city manager dated March 16, 1976, plaintiff's supervisor noted complaints about plaintiff's behavior and expressed safety concerns about his work. However, the memorandum elicited a showing of support from the plaintiff's co-workers, who signed a petition stating that they had no fear of working with him. There was further evidence at trial that plaintiff experienced "spells" involving extreme unexplained sadness, during which he stared vacantly and had difficulty with concentration. On these occasions plaintiff would go home from work, at

his own or his supervisor's request. Occasionally plaintiff forgot to take his prescribed medication, resulting in difficulties with communication or agitation.

In 1981, plaintiff's difficulties increased. He experienced disorientation, hallucinations, depression, and paranoia. He was surly, used vulgar language, and on one occasion hit another city employee on the head. In May, 1981, he was treated and released in a hospital emergency room. In July, 1981, he stayed in another hospital for five days before checking out against his doctor's orders. Plaintiff required further hospitalization from August 3 through September 4, 1981.

Plaintiff's doctor provided him with a work release statement following his July, 1981, hospital stay. Following his August, 1981, hospitalization, a second doctor, John P. Galvin, M.D., recommended that plaintiff be allowed to return to work on September 21, 1981. In a September 22, 1981, letter to defendant's assistant city manager, Dr. Galvin stated: "The prognosis is generally good that [plaintiff] will continue to remain stabilized . . . based on the fact that he will continue to take . . . medications and remain in therapy for approximately six to eight months."

Rather than allowing plaintiff to return to work after his August, 1981, hospitalization, plaintiff's supervisors provided the city administration with a written list of concerns regarding plaintiff's mental condition and ability to work. In response to the list, defendant sent plaintiff to a clinical psychologist for evaluation on September 28 and October 2, 1981. The psychologist, Dr. Michael Abramsky, diagnosed plaintiff as suffering from a schizoaffective illness, with a guarded to poor prognosis. Dr. Abramsky determined that plaintiff was theoretically capable of returning to work but that his

reactions to the normal strains of the work situation would be totally unpredictable.

On October 16, 1981, following a meeting among plaintiff, the union steward, and two of defendant's representatives, defendant agreed to give plaintiff a six-month leave of absence to allow plaintiff to recover and defendant to reevaluate plaintiff's ability to work. During the six-month period, plaintiff began treatment with John Argy, M.D., who initially diagnosed him as suffering from chronic paranoid schizophrenia. On December 16, 1981, Dr. Argy wrote a memorandum stating that plaintiff was taking medication once a day and could return to work with "absolutely no problems." Dr. Argy continued to treat plaintiff regularly from 1981 through the time of trial. Dr. Argy testified at trial that schizophrenia is never truly cured.

Dr. Abramsky reevaluated plaintiff toward the end of the six-month leave period and concluded in a letter to defendant of March 23, 1982, that plaintiff was somewhat better but still mentally ill. His prognosis for plaintiff remained poor. Dr. Abramsky further stated that plaintiff could only function in a highly structured, stress-free, supportive environment and that his difficulties would reappear in a normal work situation.

On April 13, 1982, defendant informed plaintiff that he would not be reinstated as an employee at the Department of Public Works. On April 12, 1982, plaintiff applied for workers' compensation, stating that he suffered from a psychiatric disorder, caused or aggravated by his employment, from which he had not recovered. The instant lawsuit was filed in May, 1982. Plaintiff was hospitalized from July 9 through August 12, 1982, and again from August 22 until November 30, 1982,

due to his failure to take his prescribed medication.

The MHCRA provides that opportunities to obtain employment must be extended without discrimination where the applicant's disability is unrelated to his or her ability to perform the job. MCL 37.1102(1); MSA 3.550(102)(1); MCL 37.1103(b)(i); MSA 3.550(103)(b)(i). To recover under the MHCRA, a plaintiff must allege and prove that: (1) he or she is "handicapped" as defined in the MHCRA; (2) the handicap is unrelated to his or her ability to perform the duties of a particular job; and (3) he or she has been discriminated against in one of the ways set forth in MCL 37.1202; MSA 3.550(202). *Crancer v University of Michigan Bd of Regents,* 156 Mich App 790, 795; 402 NW2d 90 (1986).

The Legislature's definition of "handicap" includes a determinable mental characteristic or a history of the characteristic resulting from disease, injury, congenital condition of birth, or functional disorder. MCL 37.1103(b); MSA 3.550(103)(b). The "mental characteristic" covered by the MHCRA is limited to "mental retardation which is significantly subaverage general intellectual functioning and to a mentally ill restored condition." MCL 37.1103(d); MSA 3.550(103)(d).

As plaintiff here is not mentally retarded, we must decide whether his condition is "mentally ill restored." To decide what the Legislature intended this phrase to mean, we first look to any definition provided within the MHCRA. *Carr v General Motors Corp,* 425 Mich 313, 318; 389 NW2d 686 (1986). Because the statute does not contain a definition of "mentally ill restored," we must give the words their plain and ordinary meaning, under the assumption that they are meaningful and not mere surplusage. *Baker v General Motors Corp,* 409 Mich 639, 665; 297 NW2d 387 (1980).

The dictionary definition of "restore" is "to bring back to . . . a former or original state; to bring back to a healthy state; cause to recover; to bring . . . back to normal condition." *Webster's Third New International Dictionary Unabridged Edition* (1966), p 1936. At trial, Dr. Argy and Dr. Abramsky testified that the phrase "mentally ill restored" is not used in psychiatry or psychology. Dr. Argy understood it to mean return to normalcy. Dr. Abramsky interpreted the phrase to mean "reconstituted," i.e., that the patient's symptoms are under control with medication. The trial court held that the Legislature contemplated a "condition of stability or a condition characterized by stability, remission, and so forth," rejecting the notion that "restored" refers to a state in which the mental problem is nonexistent.

We find that none of the foregoing interpretations of "restored" describes plaintiff's condition at the time his employment with defendant was terminated. In April, 1982, plaintiff's mental health was neither normal nor stabilized with medication. Although plaintiff was seeing Dr. Argy regularly for treatment at that time and receiving medication under Dr. Argy's supervision, plaintiff stated on his April 12, 1982, application for workers' compensation that he had not recovered from his psychiatric disorder. Moreover, plaintiff's unreliability in taking the medication prescribed for him necessitated his hospitalization throughout much of 1982.

Because plaintiff was not "mentally ill restored" at the time defendant failed to reinstate him as an employee, he does not fall into the category of persons covered by the MHCRA, and may not claim the act's protections. *Crancer, supra.* Plaintiff's complaint thus failed to state a claim on which

relief can be granted, and should have been dismissed following defendant's motion for summary disposition pursuant to MCR 2.116(C)(8).

Reversed.