ASHWORTH v JEFFERSON SCREW PRODUCTS, INC

Docket No. 101043. Submitted October 3, 1988, at Detroit. Decided
May 1, 1989. Leave to appeal applied for.

Plaintiff, Duane Ashworth, was laid off from employment with
defendant Jefferson Screw Products, Inc., on March 23, 1983.
He was injured in an automobile accident on November 17,
1984, and his doctor estimated that he would be unable to work
until November 12, 1985. On September 3, 1985, plaintiff was
recalled from layoff status. He was unable to return when
requested and on September 17, 1985, he was terminated from
employment by defendant Donald Pinkerton, president of the
defendant company, pursuant to the terms of a collective
bargaining agreement applicable to his employment. After
failing to resolve his grievance regarding his termination
through his union, plaintiff brought an employment discrimina-
tion action against the defendants in the Oakland Circuit Court
alleging (1) that he was discharged in violation of the Michigan
Handicappers' Civil Rights Act and that the discharge was a
pretext for discrimination, (2) that defendants violated the
HCRA by failing to make reasonable accommodation to plaintiff
by granting him a medical leave until he could return to work,
(3) that defendants discharged him or discriminated against
him for fear he would file a workers' compensation claim
against the defendant company in the future, and (4) that
defendants' actions violate the public policy of the state. The
trial court, Robert L. Templin, J., granted defendants' motion
for summary disposition. Plaintiff appealed.

The Court of Appeals held:

1. Plaintiff's disability was directly related to his ability to
perform the job. Thus, he was not handicapped within the
meaning of the HCRA. The trial court properly granted sum-
mary disposition for failure to state a cause of action. There-

REFERENCES

Am Jur 2d, Job Discrimination §§ 124-126.

Recovery for discharge from employment in retaliation for filing
workers' compensation claim. 32 ALR4th 1221.

Construction and effect of state legislation forbidding job discrimi-
nation on account of physical handicap. 90 ALR3d 393.

fore, the question of defendants' pretext or motivation need not be addressed.

2. Defendants' duty under the HCRA to make a reasonable accommodation did not extend to granting plaintiff a medical leave until such time as he would be able to perform the requirements of his job.

3. An alleged retaliatory discharge premised upon the employer's anticipation of a future workers' compensation claim does not state a legally cognizable cause of action.

Affirmed.

SHEPHERD, J., dissented. It is his belief that the majority fails to take into account the factor of time. He would hold that a temporary disability that can, within the particular employment context, be remedied within a reasonable time is not a handicap for which an employee may be discharged. He would also find that the public policy of the state prohibits an employer from discharging an employee based on the belief that the employee may file a workers' compensation claim in the future. He would reverse.

1. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — HANDICAP.

The Michigan Handicappers' Civil Rights Act covers only those whose disability is unrelated to the ability to perform the particular job or position; a disability that is related to one's ability to perform the duties of a particular position is not a handicap within the meaning of the act (MCL 37.1202[1][b]; MSA 3.550[202][1][b]).

2. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT.

A plaintiff, to recover under the Michigan Handicappers' Civil Rights Act, must allege and prove that he is handicapped as defined in the act, the handicap is unrelated to his ability to perform the duties of a particular job, and he has been discriminated against in one of the ways set forth in the act.

3. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — DUTY TO ACCOMMODATE.

The duty of an employer to accommodate handicapped employees under the Michigan Handicappers' Civil Rights Act is limited to the alteration of physical structures to allow access to the place of employment and the modification of peripheral duties to allow job performance; the duty does not extend to new job placement or vocational rehabilitation (MCL 37.1202[1][g]; MSA 3.550[202][1][g]).

4. WORKERS' COMPENSATION — RETALIATORY DISCHARGE.

The provision of the Workers' Disability Compensation Act which

prohibits the discharge of or discrimination against an employee in retaliation for the employee's claim for workers' compensation benefits relates only to prior claims for such benefits, not to anticipated future claims (MCL 418.301[11]; MSA 17.237[301][11]).

*Miller, Cohen, Martens & Ice, P.C.* (by *William A. Wertheimer*), for plaintiff.

*Dahlberg, Mallender & Gawne, P.C.* (by *David M. Gaskin*), for defendants.

Before: DOCTOROFF, P.J., and SHEPHERD and R. R. LAMB,* JJ.

DOCTOROFF, P.J. Plaintiff appeals as of right from the circuit court order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) and (10) and dismissing plaintiff's employment discrimination case filed under the Michigan Handicappers' Civil Rights Act, MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* On appeal, plaintiff raises three issues which he states require reversal of the trial court. Finding no issue of merit, we affirm.

Plaintiff began working at defendant Jefferson Screw Products, Inc., on March 3, 1977. On March 23, 1983, plaintiff was laid off from employment. On November 17, 1984, plaintiff was involved in an automobile accident and sustained a severe head injury, a fractured leg and ligament damage to the right knee. Surgery to repair the damage to plaintiff's leg was performed on August 12, 1985. His doctor estimated that plaintiff would be unable to work for three months from the date of surgery.

On September 3, 1985, defendant recalled plaintiff and other high seniority employees from layoff status. Plaintiff responded in person the day fol-

* Circuit judge, sitting on the Court of Appeals by assignment.

lowing his receipt of notification. Plaintiff arrived in defendant's office with one leg in a cast. He stated that he was unable to return to work at that time because he had to undergo long-term therapy, but he estimated that he expected to return to work on November 1, 1985. Plaintiff's job as a grinder operator cannot be performed while the operator is sitting down.

On September 17, 1985, plaintiff was terminated from employment pursuant to article 7, § 4(D), of the collective bargaining agreement applicable to his employment, which provides:

> An employee shall lose his seniority for the following reasons only
>
> * * *
>
> Failing to report for work after a layoff within three working days when called by the company by registered mail or telegram unless an employee presents a reason acceptable to the management.

The termination report stated that plaintiff was terminated for failure to return to work from layoff due to injuries from an accident. Donald Pinkerton, president of defendant company, advised plaintiff that his injuries were not an acceptable reason to the management and that the company needed to fill the position immediately.

Plaintiff filed a grievance through his union. The union's position was that plaintiff should be returned to layoff status until he was released to return to work by his physician. Defendants denied the grievance, stating that the employee's reason was not acceptable to management "for obvious reason." By its vote not to strike, the union membership declined to pursue plaintiff's grievance further.

On March 17, 1986, plaintiff initiated this em-

ployment discrimination suit alleging (1) that he was discharged in violation of the HCRA, and that the discharge was a pretext for discrimination, (2) that defendants violated the HCRA by failing to make "reasonable accommodation" to plaintiff by granting him a medical leave until he was able to return to work, (3) that defendants discharged plaintiff or discriminated against him for fear he would in the future file a workers' compensation claim against defendant company, and (4) that defendants' actions violate the public policy of the State of Michigan.

Defendants' motion for summary disposition pursuant to MCR 2.116(C)(8) and (10) was granted and an order entered on May 5, 1987.

A motion for summary disposition pursuant to MCR 2.116(C)(8), failure to state a claim upon which relief can be granted, is tested by the pleadings alone. Only the legal basis of the complaint is examined. The factual allegations of the complaint are accepted as true, along with any inferences which may fairly be drawn therefrom. Unless the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery, the motion should be denied. *Mills v White Castle System, Inc,* 167 Mich App 202, 205; 421 NW2d 631 (1988).

A motion for summary disposition brought under MCR 2.116(C)(10), no genuine issue as to any material fact, tests whether there is factual support for the claim. In so ruling, the trial court must consider the affidavits, pleadings, depositions, admissions and other documentary evidence submitted by the parties. MCR 2.116(G)(5). The opposing party must show that a genuine issue of fact exists. Giving the benefit of all reasonable doubt to the opposing party, the trial court must determine whether the kind of record that might be devel-

oped would leave open an issue upon which rea-
sonable minds could differ. *Metropolitan Life Ins
Co v Reist,* 167 Mich App 112, 118; 421 NW2d 592
(1988). A reviewing court should be liberal in
finding that a genuine issue of material fact exists.
A court must be satisfied that it is impossible for
the claim or defense to be supported at trial
because of some deficiency which cannot be over-
come. *Rizzo v Kretschmer,* 389 Mich 363, 371-372;
207 NW2d 316 (1973).

The party opposing an MCR 2.116(C)(10) motion
for summary disposition bears the burden of show-
ing that a genuine issue of material fact exists.
*Fulton v Pontiac General Hospital,* 160 Mich App
728, 735; 408 NW2d 536 (1987). The opposing party
may not rest upon mere allegations or denials of
the pleadings but must, by other affidavits or
documentary evidence, set forth specific facts
showing that there is a genuine issue for trial.
MCR 2.116(G)(4). If the opposing party fails to
make such a showing, summary disposition is
appropriate. *Rizzo,* p 372.

I

Plaintiff claims that the trial court improperly
granted defendants' motion for summary disposi-
tion because defendants' stated reason for the
discharge, failure to return to work from layoff,
was a pretext for discriminating against him be-
cause of a perceived handicap in violation of MCL
37.1202(1)(b); MSA 3.550(202)(1)(b), which provides:

An employer shall not:

\* \* \*

Discharge or otherwise discriminate against an
individual with respect to compensation or the
terms, conditions, or privileges of employment,
because of a handicap that is *unrelated to the*

*individual's ability to perform the duties of a particular job or position.* [Emphasis added.]

The HCRA covers only those whose disability is unrelated to the ability to perform the job. The handicapped person seeking employment must be capable of performing the duties of the position. *Carr v General Motors Corp,* 425 Mich 313, 321-322; 389 NW2d 686 (1986), reh den 426 Mich 1231 (1986). A disability that is related to one's ability to perform the duties of a particular position is not a "handicap" within the meaning of the HCRA. *Id.,* pp 315-316.

By his own admissions, plaintiff was unable to perform the duties of his position as a grinder operator. He documented this with a doctor's note which stated that he could not return to work until November 1, 1985, two months after the recall. Plaintiff's disability prevented him from fulfilling the requirements of the job at the time of discharge. Plaintiff's handicap was directly related to his ability to perform the job. Thus, plaintiff was not "handicapped" within the meaning of the HCRA.

To recover under the HCRA, a plaintiff must allege and prove that (1) he or she is "handicapped" as defined in the HCRA, (2) the handicap is unrelated to his or her ability to perform the duties of a particular job, and (3) he or she has been discriminated against in one of the ways set forth in the statute. *Doman v Grosse Pointe Farms,* 170 Mich App 536, 541; 428 NW2d 708 (1988).

We hold that the trial court's grant of summary disposition for defendants on the ground that plaintiff failed to state a cause of action under the HCRA was correct. Therefore, we need not address the question of defendants' pretext or motivation.

II

Plaintiff claims that he would have been able to perform the requirements of his job within two months after the recall and that defendants had a statutory duty to make a reasonable accommodation to his handicap by granting him a medical leave. We disagree.

MCL 37.1202(1)(g); MSA 3.550(202)(1)(g) provides:

> An employer shall not:
>
> * * *
>
> Discharge or take other discriminatory action against an individual when *adaptive devices or aids* may be utilized thereby enabling that individual to perform the specific requirements of the job.

The duty of an employer to accommodate handicapped employees under the handicappers' act is limited to (1) the alteration of physical structures to allow access to the place of employment and (2) the modification of peripheral duties to allow job performance. The duty to accommodate imposed under the handicappers' act does not extend to new job placement or vocational rehabilitation efforts. *Rancour v The Detroit Edison Co,* 150 Mich App 276, 279; 388 NW2d 336 (1986), lv den 428 Mich 860 (1987).

In *Wilson v Acacia Park Cemetery Ass'n,* 162 Mich App 638, 643-644; 413 NW2d 79 (1987), this Court held:

> [P]laintiff's disability prevented him from fulfilling the requirements of his job at the time of his discharge. Hence, it cannot be said that the handicap was unrelated to employment. Plaintiff's alleged subsequent recovery from his medical disability and regained ability to perform the job does

not alter this conclusion. Even if this allegation is true, defendant's reliance on plaintiff's medical condition to justify the discharge shows a sufficient relationship to employment. Whether a particular medical condition is related to employment should not depend on the correctness of the employer's evaluation of the prospects of the employee's eventual recovery.

Nowhere in the handicappers' act do we find a requirement that an employer leave a job open until a plaintiff's handicap is removed. In accordance with *Carr* and *Wilson,* we hold that defendants' duty to make a "reasonable accommodation" did not extend to granting plaintiff a medical leave until such time as he would be able to perform the requirements of his job.

### III

Plaintiff contends that he was discharged because defendants anticipated that he would file a workers' compensation claim against them. Attached to plaintiff's brief in response to defendants' motion for summary disposition was the affidavit of Robert Reidt, president of the UAW Local 189. Reidt stated that the only reason Pinkerton gave as to why he would not grant plaintiff a medical leave was "he was too great of a workmens [sic] comp risk and my rates are high enough now."

In *Sventko v The Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976), it was held that a discharge of an employee in retaliation for the employee's filing of a lawful workers' compensation claim against an employer is not consistent with the public policy of this state. Plaintiff argues that this Court should extend the holding in *Sventko* and hold that it is also contrary to public policy to

discharge an employee in anticipation that the employee will file a claim in the future.

This argument was specifically rejected in *Wilson, supra,* pp 645-646, where this Court held:

> The statutory provision prohibiting retaliatory discharge in MCL 418.301(11); MSA 17.237(301)(11) does not help plaintiff because it prohibits discharge or discrimination only in retaliation for *prior* claims for workers' compensation benefits. Here plaintiff premises his right of recovery on defendant's anticipation of *future* claims. Prior to the enactment of 1981 PA 200, MCL 418.301; MSA 17.237(301) did not explicitly prohibit retaliatory discharge of a workers' compensation claimant. However, this Court in cases arising prior to that time applied the public policy exception noted above to hold that retaliatory discharge was actionable for claims filed prior to discharge. *Sventko v The Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976); *Hrab v Hayes-Albion Corp,* 103 Mich App 90; 302 NW2d 606 (1981); *Goins v Ford Motor Co,* 131 Mich App 185, 192-194; 347 NW2d 184 (1983), lv den 424 Mich 879 (1986).
>
> \* \* \*
>
> We hold that retaliatory discharge premised upon the employer's anticipation of a future claim does not state a legally cognizable cause of action. [Emphasis in original.]

Affirmed.

R. R. Lamb, J., concurred.

Shepherd, J. *(dissenting).* We are called upon to interpret the meaning of "a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202(1)(b); MSA 3.550(202)(1)(b). In my view, the majority opinion does not adequately take into account the factor of time. Does the statute mean

that an employee may be discharged if he has a handicap at a given moment in time that prevents him from performing his duties if the handicap can be remedied at a future time so long as the delay does not stand in the way of the employer's need to have the job done? I think not.

The statute defines a handicap in the following terms:

> (b) "Handicap" means a determinable physical or mental *characteristic* of an individual or a history of the *characteristic* which may result from disease, injury, congenital condition of birth, or functional disorder which *characteristic*:
>
> (i) . . . is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion. [MCL 37.1103; MSA 3.550(103). Emphasis added.]

Was plaintiff's condition a "characteristic"? He had been in an automobile accident and had an injured leg which was expected to heal in two months. As I understand the term "characteristic," the word implies a "distinctive character, quality, feature or attribute . . . a trait, feature or quality that designates the identifying and especially the intrinsic feature." *The American Heritage Dictionary of the English Language, New College Edition,* p 226 (1978). I conclude that a temporary disability that can, within the particular employment context, be remedied within a reasonable time is not a handicap for which an employee may be discharged. Otherwise, an employee who needs his eyeglasses to work could be discharged if he broke them, even if they could be replaced within hours. My essential point is that the factor of time must be taken into account.

In this case, the employer had at least one other

employee on layoff status who could have been recalled. In fact, this is my understanding of what occurred. The temporary disability was not a characteristic that created any production problem for the employer. In the employer's mind he could have easily put plaintiff on medical leave. This was the employer's general policy and he did not do so here because, according to plaintiff's version of the facts, he believed plaintiff presented an increased risk of filing a workers' compensation claim. This is evidence that this was the real motivation of the employer. The employer's interpretation of the Handicappers' Civil Rights Act is a subterfuge for a different agenda. The act was intended to shield employees from discharge by reason of a handicap that does not prevent them from doing their job. It was not designed for use as a sword by employers to get rid of undesired employees. If plaintiff can prove his allegations, the employer should not be allowed to pervert the statute in this manner.

The majority opinion relies on *Carr v General Motors Corp*, 425 Mich 313; 389 NW2d 686 (1986). However, in *Carr* the employee was permanently disabled so I do not agree that the case fits into the pattern of the facts of the instant matter. Furthermore, *Carr* quotes from the 1976 Senate Journal:

> [I]f a handicapped person seeking employment meets the qualifications of the job and can attain the performance levels required *within a reasonable time*, he must, by law be given the same opportunity as other applicants to secure the position [1976 Senate Journal 590]. [Emphasis added. *Id.*, p 319.]

Thus, even if plaintiff were handicapped, the employer must have afforded him a reasonable

time to heal his wounds on the same conditions as other employees. The testimony that the employer would have placed him on sick leave were it not for the increased workers' compensation risk is strong evidence that plaintiff was not treated equally with other employees.

I now turn to the second use that plaintiff makes of the employer's statement that plaintiff was fired because he was an increased workers' compensation risk. Plaintiff has filed a separate cause of action claiming that it is against the public policy of this state for employers to discharge employees for that reason.

Prior to the adoption of MCL 418.301(11); MSA 17.237(301)(11), this Court held that it was against public policy to discharge an employee who filed a workers' compensation claim. *Sventko v The Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976). Subsection 11 states:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

The Court felt free to conclude that on policy grounds the workers' compensation statute should be interpreted to prohibit retaliatory discharge. The Legislature proceeded to codify this decision in subsection 11. *Wilson v Acacia Park Cemetery Ass'n,* 162 Mich App 638; 413 NW2d 79 (1987), then held that the amended statute does not cover discharges for anticipated future claims. I cannot agree.

Independently of plaintiff's collective bargaining

rights, which were minimal, the question is whether an employer may terminate a current employee based solely on the employer's subjective view that the employee poses a higher workers' compensation risk than other employees. The majority opinion takes the view that the Legislature of this state believes that employers may arbitrarily select out any employee for termination on no basis other than such a subjective perception. The only rationale for this view, as stated in *Wilson v Acacia Park Cemetery Ass'n, supra,* is that when subsection 11 was adopted it did not include terminations for future claims. It did, however, include terminations for "the exercise of the employee on behalf of himself or herself or others of a right afforded by this act."

I conclude that one such right is the right of an at-risk employable worker to continue working and file a claim in the future if his or her condition warrants such action. I cannot conceive that the Legislature intended that, upon adoption of the Workers' Disability Compensation Act, employers could go through the workplace and eliminate all workers who were in the smallest measure likely to file claims in the future. The act was not adopted to create an elite corps of physically fit employed workers and another corps of less fit unemployed nonworkers. An act to remedy the scourge of industrial accidents was not intended to create a permanent class of unemployable men and women whose only sin is to be less fit than Superman or Wonderwoman. Perhaps this was the thought behind *Hrab v Hayes-Albion Corp,* 103 Mich App 90; 302 NW2d 606 (1981), which allowed recovery for a discharge that was designed to forestall the filing of a workers' compensation claim.

In the last analysis, even if subsection 11 itself

may not be interpreted to include future claims, I submit that if this Court could use public policy as a basis for the decision in *Sventko* before the adoption of subsection 11, we may do so after its adoption. I would reverse and remand for trial.