William C. MAURO, Plaintiff,

v.

BORGESS MEDICAL CENTER,
a Michigan Not For Profit
Corporation, Defendant.

No. 4:94–CV–05.

United States District Court,
W.D. Michigan,
Southern Division.

May 4, 1995.

Edward J. Annen, Jr., Kalamazoo, MI, for plaintiff.

Craig H. Lubben, Miller, Johnson, Snell & Cummiskey, Kalamazoo, MI, for defendant.

## OPINION OF THE COURT

McKEAGUE, District Judge.

Plaintiff William C. Mauro was employed by defendant Borgess Medical Center ("Borgess") from May 1990 through August 24, 1992 as an operating room surgical technician. In June 1992, Borgess officials became aware of reason to believe that plaintiff was infected with human immunodeficiency virus (HIV), the virus that causes AIDS (acquired immune deficiency syndrome). When plaintiff refused to submit to testing to determine whether he was HIV-positive, and refused to accept an alternative accommodating position at the hospital, he was laid-off.

In this action, plaintiff asserts four claims. In count I, he alleges defendant's treatment of him constitutes unlawful discrimination, in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Count II contains a similar claim for discrimination in violation of the Michigan Handicappers' Civil Rights Act, M.C.L. § 37.1101 *et seq.* In count III, plaintiff asks the Court to declare a portion of the Michigan Handicappers' Civil Rights Act unconstitutional as violative of equal protection. Count IV contains a state tort claim for intentional infliction of emotional distress.

Defendant has moved for summary judgment in its favor on all four claims. The motion requires the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material

fact that warrants a trial. See generally *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of plaintiff's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson, supra,* 477 U.S. at 251, 106 S.Ct. at 2511. The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Ind. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court has discretion to grant the motion if a claim is, in the factual context, implausible. *Id.; Barnhart, supra,* 12 F.3d at 1389.

## I

■ To prevail on his claim under the ADA and the Rehabilitation Act, plaintiff must show essentially (1) that he has a disability; (2) that he is otherwise qualified for the employment in question; and (3) that he was excluded from the employment solely because of the disability. *Doe v. University of Maryland Medical System Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995). For purposes of this motion, the parties agree, only the second element is at issue. Borgess maintains that plaintiff's HIV-positive condition disqualifies him from working as a surgical technician and he is not "otherwise qualified."

■ A person is "otherwise qualified" if he or she can perform the essential functions of the job in question. *Bradley v. University of Texas M.D. Anderson Cancer Center,* 3 F.3d 922, 924 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1071, 127 L.Ed.2d 389 (1994).

Under the ADA and the Rehabilitation Act, an individual is not otherwise qualified if he poses a direct threat to the health or safety of others that cannot be eliminated by reasonable accommodation. See 42 U.S.C. §§ 12111(3), 12113(a)–(b); 29 U.S.C. § 706(8)(D). "Direct threat" has been defined as a "significant risk." 42 U.S.C. § 12111(3); *School Bd. of Nassau County, Fla. v. Arline,* 480 U.S. 273, 287, 107 S.Ct. 1123, 1130–31, 94 L.Ed.2d 307 (1987); *Doe v. University of Maryland, supra,* 50 F.3d at 1265.

Among his duties as a surgical technician, plaintiff testified in deposition that he was occasionally required to place his hands upon and into the patient's surgical incision to provide room and visibility to the surgeon. He also testified that he was always exposed during surgery to the possibility of sustaining a needle stick or minor laceration and that, in fact, he had sustained two such injuries during his two years as a surgical technician.

It is undisputed that HIV is a blood-borne pathogen that can be transmitted person-to-person by contact of infected blood with an open wound of another. It is also undisputed that HIV causes AIDS, which is fatal, and for which there is no known cure. Under the present state of medical knowledge, a person once infected with HIV remains infected for the rest of his or her life.

■ To determine whether the above facts justify Borgess's conclusion that plaintiff's continued work as a surgical technician poses, by virtue of his HIV infection, a direct threat or significant risk to the health and safety of others, the following factors must be considered:

(a) the nature of the risk (how the disease is transmitted), (b) the duration of the risk (how long is the carrier infectious), (c) the severity of the risk (what is the potential harm to third parties), and (d) the probabilities the disease will be transmitted and will cause varying degrees of harm.

*Arline, supra,* 480 U.S. at 288, 107 S.Ct. at 1131; *Doe v. University of Maryland, supra,* 50 F.3d at 1264–66; *Bradley, supra,* 3 F.3d at 924. The parties agree that the first three

factors indicate plaintiff represents a significant risk to others. Plaintiff contends, however, that the probability of transmission is so slight as to overwhelm the first three factors and create a question of fact for the jury to determine.

▆▆▆ Plaintiff points to the testimony of Dr. David Davenport, M.D., one of plaintiff's treating physicians, to the effect that the risk of HIV transmission is so remote as to not justify, in his opinion, plaintiff's exclusion from the operating room. Another treating physician, Dr. Mark DeYoung, M.D., also testified that plaintiff should have been allowed to continue as a surgical technician.

Borgess contends this testimony fails to create a genuine issue of material fact for the following reasons. First, Dr. Davenport recognized that plaintiff's direct contact with a patient's body in surgery represented a risk, "a real risk," to the patient's care and safety. Second, Dr. DeYoung admitted that his opinion about plaintiff's fitness to work as a surgical technician might change if he were to learn that a surgical technician is required to occasionally place his hands on or into a surgical incision and is exposed to the risk of needle sticks and lacerations. Third, other courts have recently held, as a matter of law, on nearly identical facts, that an HIV-infected surgeon or surgical technologist is a "direct threat" and is not otherwise qualified. See *Doe v. University of Maryland, supra; Bradley, supra.*

The Court has carefully reviewed both of these decisions and finds them materially indistinguishable and properly reasoned. As both opinions observe, the fact that the probability of transmission is small is not dispositive. Probability of transmission is but one of four factors used to determine significance of the risk. Because there is a real possibility of transmission, however small, and because the consequence of transmission is invariably death, the threat to patient safety posed by plaintiff's presence in the operating room performing the functions of a surgical technician is direct and significant. In the words of the *Bradley* decision:

> While the risk is small, it is not so low as to nullify the catastrophic consequences of an accident. A cognizable risk of perma-

nent duration with lethal consequences suffices to make a surgical technician with Bradley's responsibilities not "otherwise qualified."

3 F.3d at 924. Bradley's responsibilities were materially identical to plaintiff's duties in this case.

No less compelling are the words of Borgess's argument. Noting that patient care is its mission, Borgess contends "[i]t is fundamentally inconsistent with that mission to expose a patient to a 'direct risk' of acquiring a fatal disease when (1) there is no patient care reason for doing so, and (2) the risk can be eliminated." The Court agrees.

Accordingly, the Court concludes there is no genuine issue of material fact. Plaintiff's condition represents a direct threat or significant risk to the health or safety of others. The evidence that the probability of transmission is very small, though undisputed, does not create a genuine issue of fact; viewed in conjunction with the other three relevant considerations, it amounts to a mere scintilla of evidence that does not alter the facts that transmission is possible and invariably lethal.

Plaintiff contends, however, that the risk can be eliminated without removing him from the operating room. Plaintiff observes that direct manual contact with a patient's surgical incision is not an express requirement of the surgical technician job description. He concludes that the occasional "hands-on" contact that has been required of him is not an essential function, but a marginal function of the position. He argues that Borgess should be required to accommodate him by eliminating this marginal function of the surgical technician's duties.

This proposal is answered by the affidavit of plaintiff's supervisor, Sharon Hickman, R.N., Interim Director of Operating Rooms at Borgess in June and July 1992. In describing her statements to the Borgess Ad Hoc HIV Task Force which decided plaintiff could not continue as a surgical technician, she explains:

8. During the July 23, 1992, Task Force meeting, I informed the Task Force that the general job duties of a Surgi-

cal Technician were as follows: preparing and maintaining the equipment used during the course of a surgical procedure, including handing sharp instruments to the operating surgeon. On an infrequent basis, the Surgical Technician is required to assist in the performance of surgery by holding back body tissue, with the use of either retractors or the Technician's hands, to assist the surgeon in visualizing the operative site. The Surgical Technician also may assist the surgeon with suturing and other duties related to the performance of the operation.

9. I also advised the Task Force that although the Surgical Technician's assistance in the performance of the surgical procedure itself occurs on an infrequent basis, it is not possible to restructure the job to eliminate the Surgical Technician from performing such functions. This is because the extent to which the Surgical Technician is needed to assist in the surgical wound occurs on an emergency basis and cannot be planned in advance. In some cases (particularly on off-shifts) the Surgical Technician is required to assist at the surgery because an R.N. or Surgical Assistant is not available. On other occasions, the R.N. or Surgical Assistant may be present at the operation, however, due to the complexity or other unexpected requirements of the procedure, another pair of hands is needed in the operative site, and the Surgical Technician is required to assist. Most often, the Surgical Technician is required to assist in the operative site because more hands are needed to visualize the surgical area.

It is thus apparent that the accommodation plaintiff demands is not so simple. Ms. Hickman's unrefuted affidavit demonstrates that if plaintiff were exempted from direct patient contact, a fourth person would be needed in the operating room for the emergency that occasionally, albeit infrequently, arises.

■ An employer is obliged to offer reasonable accommodations that would enable an employee with a disability to perform the essential functions of his or her job. *Arline,* 480 U.S. at 287, n. 17, 107 S.Ct. at 1131, n. 17. However, the employer is not required to restructure the essential functions of a position to accommodate an employee's disability. *Bradley,* 3 F.3d at 925; *Valdez v. Albuquerque Public Schools,* 875 F.Supp. 740, 745 (D.N.M.1994).

■ Although the need for the surgical technician to place his hands in direct contact with or in the immediate vicinity of the incision arises infrequently, the need for such assistance is foreseeable and is essential to the success of the surgical procedure. It is, therefore, properly characterized as an essential function, not a marginal function of the position. To require Borgess to alter this responsibility of the surgical technician and add another person to the surgical team is not reasonable. The accommodation plaintiff demands would entail a job restructuring in the operating room, a burden the law does not impose on the employer. See *Bradley,* 3 F.3d at 925 (rejecting the identical proposed accommodation of an HIV-infected surgical technician); and *Doe v. University of Maryland, supra,* 50 F.3d at 1266.

In fact, Borgess did offer plaintiff a reasonable accommodating position as case cart/instrument coordinator. The position would have enabled plaintiff to avoid direct patient contact under circumstances posing risk of percutaneous injury while earning substantially similar pay and benefits. He rejected the offer.

The Court is satisfied that defendant Borgess has done all that is required under the ADA and the Rehabilitation Act to accommodate plaintiff's condition. The Court finds, as a matter of law, that plaintiff has a contagious infection that poses a direct threat to the health and safety of others that cannot be eliminated by reasonable accommodation. It follows that defendant's removal of plaintiff from the operating room does not constitute unlawful discrimination under the ADA or the Rehabilitation Act. Defendant Borgess Medical Center is therefore entitled to summary judgment on the claim contained in count I.

## II

Defendant also challenges plaintiff's claim under the Michigan Handicapper's Civil Rights Act ("MHCRA"). The MHCRA prohibits discrimination in employment "because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position," or "when adaptive devices or aids may be utilized thereby enabling that individual to perform the specific requirements of the job." M.C.L. § 37.1202(1). Based on the analysis contained in part I of this opinion, Borgess contends plaintiff's HIV infection does not constitute a handicap that is unrelated to his ability to perform the duties of a surgical technician. Plaintiff has not specifically responded. Both parties appear to have presumed that the reasoning applied to the federal discrimination claim would control adjudication of this claim as well. The presumption is well-taken.

■■■■ Michigan caselaw clearly establishes that where the plaintiff's disability is related to his ability to perform the duties of his employment, he is not "handicapped" within the meaning of the MHCRA, and is therefore not protected by the MHCRA. *Ashworth v. Jefferson Screw Products, Inc.,* 176 Mich.App. 737, 743, 440 N.W.2d 101 (1989), *lv. app. denied,* 433 Mich. 873, 447 N.W.2d 690 (1989); *Johnson v. Lansing Dairy Co.,* 175 Mich.App. 605, 610, 438 N.W.2d 257 (1988). For the reasons discussed in part I, *supra,* it is established that plaintiff's HIV infection does interfere with his ability to perform the essential functions of a surgical technician. He is, therefore, not "handicapped" for purposes of the MHCRA.

■■■■ Moreover, even if plaintiff were deemed "handicapped," the employer's duty to accommodate would be limited to alteration of physical structures and modification of peripheral job duties. *Ashworth, supra,* 176 Mich.App. at 744, 440 N.W.2d 101; *Marsh v. Dep't of Civil Service (After Remand),* 173 Mich.App. 72, 80, 433 N.W.2d 820 (1988), *lv. app. denied,* 432 Mich. 874 (1989). Plaintiff's demanded accommodation would require modification of essential, not peripheral, functions, transcending the requirements of the MHCRA.

Plaintiff has failed to present evidence creating a genuine issue of material fact. Defendant Borgess is entitled to summary judgment on this claim as well.

## III

■■■ In count III, plaintiff seeks a declaratory judgment. Section 210 of the MHCRA, M.C.L. § 37.1210, defines employers' duty to accommodate the needs of handicapped employees. Employees are obliged to accommodate handicappers unless the accommodation would impose an undue hardship. M.C.L. § 37.1102. Section 210 sets forth standards for determining whether the hardship posed by accommodation is "undue." Exempted from the requirements of § 210 are nonprofit corporations. M.C.L. § 37.1210(17)(b). Defendant Borgess Medical Center is a not for profit corporation. Plaintiff asks the Court to declare the exemption unconstitutional as violative of equal protection. The parties have not briefed the merits of this claim, but its disposition is now clear.

The Court having determined as a matter of law, in part II, *supra,* that plaintiff is not "handicapped" within the meaning of the MHCRA, it is clear that plaintiff is not entitled to the protections of the MHCRA. He has not proved a prima facie case of cognizable discrimination. Therefore, defendant is not required to show that accommodation would impose an undue burden. The validity of the § 210 exemption, thus, never comes into question; it is a moot question, a hypothetical question. It follows that there is no live, justiciable case or controversy before the Court justifying exercise of jurisdiction under Article III of the United States Constitution. See generally, 6A Moore's Federal Practice, 2d ed., ¶¶ 57.11–57.13. Borgess is therefore entitled to summary judgment on the claim contained in count III.

## IV

■■■ Count IV asserts a claim for intentional infliction of emotional distress. Plaintiff can prevail on this claim only upon showing that defendant's conduct "has been so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 602–03, 374 N.W.2d 905 (1985); *Meek v. Michigan Bell Telephone Co.*, 193 Mich.App. 340, 346, 483 N.W.2d 407 (1991), *lv. app. denied* 440 Mich. 872, 486 N.W.2d 743 (1992). Borgess contends plaintiff has adduced no evidence of extreme and outrageous conduct.

■ The Court agrees. When Borgess personnel learned of reason to question plaintiff's fitness to work as a surgical technician, they gave plaintiff fair opportunity to demonstrate he was not HIV-positive, they commissioned a task force to determine whether plaintiff could safely continue as a surgical technician, and they offered him a reasonable accommodating position before he was laid-off. Far from extreme and outrageous, defendant's conduct in this matter has been eminently reasonable. Summary judgment will be awarded to defendant Borgess on this claim as well.

### V

In sum, plaintiff has failed to present evidence creating a genuine issue of material fact with respect to any of his four claims. Defendant Borgess is entitled to judgment as a matter of law on all claims. A judgment order consistent with this opinion shall issue forthwith.[1]

---

1. This disposition renders defendant's outstanding motion for sanctions largely, if not totally, moot. The motion for sanctions will therefore be denied.