*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ABDALLAHALIED YUSEF,

        Plaintiff-Appellant,

v

DURHAM SCHOOL SERVICES, INC, and
EDWARD GALLAGHER,

        Defendants-Appellees.

UNPUBLISHED
March 21, 2024

No. 365972
Washtenaw Circuit Court
LC No. 21-000438-CD

Before: FEENEY, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Plaintiff appeals from an order of the circuit court granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) on plaintiff's claims for retaliatory discharge under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*., and under the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.*[1]  We affirm.

Plaintiff claims to have suffered a lower back injury when the bus he was driving for defendant, Durham School Services, Inc. (Durham), hit a bump.  According to plaintiff, he has suffered lower back pain "throughout the years."  A fellow bus driver informed the dispatcher that a relief driver was necessary to finish the route.  Plaintiff was on medical leave, with his doctor giving him a note that would allow him to return to work on January 8, 2019, but with a "no lifting" work restriction.  Plaintiff claims that he was constructively discharged on January 9, 2019, when Edward Gallagher, Durham's general manager, told him that he had to be 100% healthy and have no work restrictions in order to return to work.  He claims that this was done in retaliation for

---

[1] Plaintiff had also raised claims alleging racial and national origin discrimination and intentional infliction of emotional distress but does not argue on appeal that the trial court erred in dismissing those claims as well.

exercising his rights under the WDCA. But plaintiff did not file his claim for compensation benefits until March 2019.

Plaintiff provided multiple forms of documentation from himself and physicians assessing the need for his medical leave and ability to return to work. Beginning on October 8, 2018, he provided a Michigan Medical note that stated that plaintiff could return to work on October 11, 2018. Following that was a note from Integrated Healthcare Association (IHA) dated October 11, 2018, that stated he could return to work on October 15, 2018. Then plaintiff provided another note from Michigan Medical on November 15, 2018, stating that he could return to work on November 16, 2018. On January 6, 2019, a note from plaintiff to "Mr. Charlie"[2] stated that his doctor advised him to return to work on January 7, 2019, "and to perform certain work with my current situation until the end of January." Then a note dated January 7, 2019, from plaintiff's treating physician, Dr. Breakey, said plaintiff could return to work on February 4, 2019. A January 21, 2019, Michigan Medical note was then provided that stated plaintiff could return to work on February 21, 2019. And then a February 25, 2019, Michigan Medical note stated that plaintiff could return to work on March 11, 2019; it did not note any restrictions upon his return to work and, in fact, said that he "should be able to resume duties . . . ." A December 2019 Independent Medical Exam (IME) declared that plaintiff was able to return to work without restrictions. Plaintiff had not returned to work in March 2020 when he was terminated for job abandonment.

The standard for a motion under MCR 2.116(C)(10) was summarized in *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999):

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co,* 451 Mich 358; 547 NW2d 314 (1996).

This Court reviews the grant or denial of a motion for summary disposition de novo. *Maiden*, 461 Mich at 118.

Turning first to plaintiff's claim that defendants retaliated against him for exercising his rights under the Worker's Disability Compensation Act, plaintiff's argument is lacking. MCL 418.301(13) provides as follows:

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under this act or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act.

---

[2] "Mr. Charlie" is presumably Charles Bugg, Durham's operations supervisor.

This Court in *Cuddington v United Health Services, Inc*, 298 Mich App 264, 275; 826 NW2d 519 (2012), summarized the approach to analyzing a retaliation claim:

> In *Phillips v Butterball Farms Co, Inc. (After Second Remand)*, 448 Mich 239, 248–249; 531 NW2d 144 (1995), our Supreme Court held that an action for wrongful discharge for filing a workers' compensation action sounds in tort. Accordingly, we draw upon the structure of other statutorily created retaliation torts, including claims brought under the Whistleblowers' Protection Act, MCL 15.361 *et seq.*, and the Civil Rights Act (CRA), MCL 37.2101 *et seq.* To establish a prima facie case of retaliation under the WDCA, an employee who has suffered a work-related injury must present evidence: (1) that the employee asserted a right to obtain necessary medical services or actually exercised that right, (2) that the employer knew that the employee engaged in this protected conduct, (3) that the employer took an employment action adverse to the employee, and (4) that the adverse employment action and the employee's assertion or exercise of a right afforded under MCL 418.315(1) were causally connected. See *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997) (noting the elements of a prima facie case of unlawful retaliation that the plaintiff must prove to establish a violation of the CRA).

Once a plaintiff has established the prima facie case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory explanation for the adverse employment action. *Cuddington*, 298 Mich App at 276. If the defendant does so, the burden then shifts back to the plaintiff:

> If the defendant produces a legitimate, nondiscriminatory reason for its action, "the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that [retaliation] was a motivating factor for the adverse action taken by the employer toward the plaintiff.' " *Id*. at 465, quoting *Lytle v Malady (On Rehearing)*, 458 Mich 153, 176; 579 NW2d 906 (1998). A plaintiff can establish that the employer's proffered reasons for the adverse employment action qualify as pretextual by demonstrating that the reasons (1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision. *Dubey v Stroh Brewery Co*, 185 Mich App 561, 565–566; 462 NW2d 758 (1990).

Plaintiff fails to meet his burden on a number of points.

While we are not convinced that plaintiff has established a causal connection between his filing for worker's compensation benefits and his discharge, we will accept, without concluding, for purposes of this appeal that plaintiff has advanced a sufficient showing to survive summary disposition. But that does not end the analysis, as we must now look to whether defendants provided a legitimate reason for the discharge and whether plaintiff can make a case that the stated legitimate reason was not the real reason supporting plaintiff's discharge.

The reason defendants offered is that plaintiff abandoned his job. Plaintiff presents no argument that job abandonment is not a legitimate, nondiscriminatory reason to terminate someone's employment. Accordingly, we conclude that that it is a legitimate, nondiscriminatory

reason to terminate an employee, and the burden shifts back to plaintiff to show evidence that the rationale defendants offered is pretextual and that retaliation was the true motive. *Cuddington*, 298 Mich App at 277.

This Court in *Cuddington*, 298 Mich App at 277, explained how a plaintiff may rebut the employer's proffered reasons for the termination:

> A plaintiff can establish that the employer's proffered reasons for the adverse employment action qualify as pretextual by demonstrating that the reasons (1) had no basis in fact, (2) were not the actual factors motivating the decision, or (3) were insufficient to justify the decision.

Plaintiff fails to provide evidence to establish any of these factors.

As for the first factor, the uncontroverted evidence shows plaintiff did not return to work for several months after the last doctor's note saying he could return to work; the February 2019 note had no restrictions upon plaintiff's return to work. And it was three months after December 2019 IME determined that plaintiff was able to return to work without restriction that he was terminated from his employment in March 2020 due to job abandonment.

As for the second factor, plaintiff argues that he would have returned to work had he been offered a light-duty assignment. But what is lacking is any meaningful evidence in support of a claim that plaintiff was terminated because he claimed worker's compensation benefits, and not because he failed to return to work. That is, at most plaintiff is arguing that he was unable to return to work without a light-duty assignment (although that is contradicted by both his own doctor's note and the IME). But that does nothing to establish that defendants' motivation in terminating him was not his failure to return to work (i.e., job abandonment) and instead was in retaliation for claiming worker's compensation benefits.

As for the third factor, plaintiff presents no compelling argument why discharge cannot be justified by a failure to report to work a year after being cleared by the physician to return to work and three months after a similar conclusion is reached in an IME.

In sum, plaintiff focuses on what he believes he was entitled to under the WDCA, rather than focusing on whether he was terminated in retaliation for making those claims. In essence, plaintiff's position comes down to the argument that he can establish a retaliatory discharge when, 17 months after the injury, nearly a year after he applied for worker's compensation benefits, and three months after receiving an IME report that stated that plaintiff was able to return to work without restriction (and to which plaintiff points to no contradictory evidence), defendants suddenly decided to terminate his employment because he had applied for benefits a year earlier and then falsely claim that it was due to job abandonment.

Turning to plaintiff's claim under the PWDCRA, it is difficult to ascertain exactly what is his basis for the claim as plaintiff's complaint consists of 4 substantive paragraphs. The first merely recites that plaintiff has a disability and is entitled to protection under the act. The second states that his disability is "unrelated to Plaintiff's ability to perform Plaintiff's job with or without reasonable accommodations." The third alleges that the act was violated "in numerous ways, including denying Plaintiff work which Plaintiff could perform." And the fourth merely sets forth

a list of claimed injuries resulting from the alleged violation.  But in looking to plaintiff's briefs, both in this Court and in the trial court, it appears that plaintiff's primary argument is based on a failure to provide a reasonable accommodation.

Turning to the briefing in the trial court, defendants' motion for summary disposition claimed that summary disposition was appropriate on three grounds.  First, that plaintiff was not disabled as defined under the act.  Second, that plaintiff had to request an accommodation in writing as required by the act.  And, third, that even if a medical slip from plaintiff's doctor satisfies the writing requirement, it would have required placing plaintiff in a new job which is not a required accommodation under the act, citing *Ashworth v Jefferson Screw Products*, 176 Mich App 737, 744; 440 NW2d 101 (1989).  Again, notably, the trial court granted summary disposition for the reasons stated in defendants' briefs.  Plaintiff's brief in response focused on the accommodation issue with respect to the PWDCRA claim.

We will accept, without deciding, that plaintiff is disabled as defined in the act.  Even so, we are not persuaded that plaintiff has made an adequate showing to survive summary disposition based upon a failure to provide an accommodation.  Section 210(18) of the PWDCRA provides:

> A person with a disability may allege a violation against a person regarding a failure to accommodate under this article only if the person with a disability notifies the person in writing of the need for accommodation within 182 days after the date the person with a disability knew or reasonably should have known that an accommodation was needed. [MCL 37.1210(18)]

Defendants argue that plaintiff did not make such a request in writing within 182 days as required by the statute.  In his reply brief, plaintiff argues that the requirement was met through his physician's statement in a medical examination report.

The medical statement appears to be a form from the Unemployment Insurance Agency (UIA) of the Michigan Department of Talent and Economic Development regarding unemployment insurance.  It bears the title of "MEDICAL STATEMENT" and indicates that it was mailed by the UIA on December 19, 2018.  The directions on the form require it to be returned to the Unemployment Insurance Agency.  It appears that plaintiff's attending physician prepared the form inasmuch as it lists July 10, 2018, as the date of first treatment or examination and December 17, 2018, as the date of the most recent treatment or examination.  It does not detail plaintiff's medical history or even the history of present illness.  Rather, it is focused solely on plaintiff's ability or inability to perform work and any limitations.  It does state that plaintiff had "limitations and/or restrictions" on his ability to work full-time.  It stated that the period of inability began on November 26, 2018,[3] and would conclude on February 1, 2019.  In response to the direction to indicate what jobs the patient is unable to perform, the response states "has aide—no lifting."  The form is dated December 26, 2018.

There is also a second "MEDICAL STATEMENT" that is the same form with a mailing date of January 4, 2019.  Plaintiff does not refer to this form in his brief on appeal.  Although

---

[3] Elsewhere on the form, it stated that the date the limitations began was December 17, 2018.

signed by the same physician, Robert Breakey, MD, it is slightly different in detail. First, it states that the first date of treatment or examination was October 7, 2018. Second, the box to be checked regarding whether plaintiff has any limitations or restrictions is not checked either "yes" or "no." In one area where it asks for an explanation of the restriction, it states "no lifting." In the section where it asks if the patient is able to work full-time, the "yes" is again checked; in the area to indicate what jobs the patient is able to perform, it states "bus driver but no lifting." In the area to indicate the dates of the periods of inability to work, it lists five different date ranges, with gaps between ranges. The earliest date is now October 7, 2018, and the latest range starts on January 7, 2019 (the day before the date of the signature on the form and approximately 3 weeks after the doctor last saw plaintiff) and now ends on February 4, 2019.

The question becomes whether this UIA form satisfies the statutory requirement. Plaintiff argues that it does satisfy the request for accommodation requirement per MCL 37.1210(18). We conclude that it does not. The phrase "has aide—no lifting" on a UIA form, if delivered to the employer (which plaintiff states that it was), may inform the employer of a restriction, but that does not specifically inform the employer of a need for an accommodation (nor what accommodation may be needed). It also demonstrates a contradiction in plaintiff's positions. On the one hand, plaintiff is claiming that the form stating "no lifting" sufficiently informs defendants of the need for an accommodation. On the other hand, part of plaintiff's argument is that lifting is not an essential job function for the position of bus driver. If the latter is the case, then there would be no need for an accommodation.

For these reasons, we conclude that plaintiff failed to satisfy the statutory requirement for a written request for an accommodation. MCL 37.1210(18).

Finally, we turn to plaintiff's argument that the trial court erred in denying his motion for reconsideration based upon newly discovered and concealed evidence. We conclude that it did not.

Plaintiff supported his motion with the attachment of five unsigned "affidavits."[4] Plaintiff stated that the affidavits were being presented under MCR 2.116(H). That rule provides:

Affidavits Unavailable.

(1) A party may show by affidavit that the facts necessary to support the party's position cannot be presented because the facts are known only to persons whose affidavits the party cannot procure. The affidavit must

  (a) name these persons and state why their testimony cannot be procured, and

---

[4] In fact, these documents are not signed, there is no signature line on the "affidavits," and none of them is notarized. Referring to these pieces of paper as "newly discovered evidence" is beyond comprehension.

(b) state the nature of the probable testimony of these persons and the reason for the party's belief that these persons would testify to those facts.

(2) When this kind of affidavit is filed, the court may enter an appropriate order, including an order

(a) denying the motion, or

(b) allowing additional time to permit the affidavit to be supported by further affidavits, or by depositions, answers to interrogatories, or other discovery.

Plaintiff's submission fails to meet the requirements of the rule. First, the plain language would require that there actually be an affidavit, presumably by plaintiff, and that that affidavit set forth the reasons why the necessary persons cannot be procured and what their anticipated testimony would be. Second, at that point the trial court's options are either (a) deny the motion or (b) grant additional time before deciding the motion for summary disposition.

In this case, plaintiff submitted no such affidavit, and the "unavailable affidavits" are nothing but unsigned sheets of paper. These unsigned documents are not affidavits that can be offered in opposition to defendants' motion based on MCR 2.116(C)(10) because they are clearly inadmissible as evidence to establish or deny the grounds stated in the motion. MCR 2.116(G)(6). Moreover, this newly discovered "evidence" was not presented as part of the response to defendants' motion for summary disposition. And, finally, the reason given in the "unavailable affidavits" for the affiants not being available to sign them is that discovery had closed. This statement only establishes that plaintiff's effort was untimely, not that it was impossible to procure the proposed affiants' signatures.

In sum, plaintiff did not provide a sufficient basis for the trial court to grant the motion for reconsideration.

For the above reasons, we conclude that the trial court did not err in granting summary disposition to defendants. In light of our conclusions in this case, we need not address the alternative arguments raised by the parties.

Affirmed. Defendants may tax costs.


/s/ Kathleen A. Feeney
/s/ James Robert Redford
/s/ Christopher P. Yates