**Thomas CASTELLER, Plaintiff,**

v.

**PEPSI–COLA METROPOLITAN BOT-TLING COMPANY, INC., a New Jersey corporation, Defendant.**

No. 97–CV–72377–DT.

United States District Court,
E.D. Michigan,
Southern Division.

April 16, 1998.

Sam G. Morgan, Sommers, Schwartz, Silver & Schwartz, PC, Southfield, MI, for Thomas Casteller, plaintiff.

Eric J. Pelton, Jeffery M. Peterson, Kienbaum, Opperwall, Hardy & Pelton, PLC, Birmingham, MI, for Pepsi-Cola Metropolitan Bottling Company, Incorporated, defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### I. INTRODUCTION

This matter is before the Court on Pepsi-Cola's ("Defendant") motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff has responded and the Defendant has replied. The Court finds that the facts and legal arguments are adequately presented in the parties' briefs, and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D.Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons stated below, Defendant's motion is granted.

### II. BACKGROUND

Plaintiff began working for Defendant Pepsi in 1979. He began as a delivery driver and worked his way up to customer representative/route truck driver. Although not currently working, Plaintiff is still an employee of the Defendant. Plaintiff has an extensive history of on-the-job injuries, from which he always returned to work after a period of absence. The current lawsuit only involves Plaintiff's repeated injury to his right rotator cuff.

In February 1991, Plaintiff injured his right rotator cuff, and, following surgery returned to work. In 1993, Plaintiff injured his right rotator cuff again. Plaintiff had surgery and returned to work. In December 1995, Plaintiff injured his right rotator cuff for the third time. Plaintiff had surgery on February 6, 1996. After a period of recovery following the February 6, 1996 surgery, Plaintiff attempted to return to work in May of 1996. However, the Defendant would not allow the Plaintiff to return work without a release from his physician that he could perform the job without re-injuring himself.

Plaintiff attempted to obtain a release from his treating physician. However, Plaintiff's physician would not release him to return to work as a route truck driver. Because the Plaintiff could no longer perform the duties of the route truck position, he was encouraged to find another position at Pepsi by the General Manager, Paul Andraschko. In June of 1996, Mr. Andraschko urged Plaintiff to apply for a management position as a territory coordinator. Although the Plaintiff interviewed for the position, he was

not hired. According to the deposition testimony of Mr. Andraschko, the reason Plaintiff was not hired was that he did not appear at all enthusiastic about the job, wasn't really interested in the position, had some reservation about the hours and the work. Moreover, Plaintiff was ambivalent about leaving the union and becoming management (Defendant's Ex. B pgs. 44–46). Plaintiff's deposition testimony confirms that he felt that way about the territory management position (Defendant's Ex. A. pgs. 119–124). Accordingly, a 38 year old individual named Frank Kimmel was hired for the position instead of Plaintiff. Plaintiff is 48 years old.

In August of 1996, an opening became available in the "swing pool." The swing pool is a group of drivers who fill in for regular drivers who are sick, injured or on vacation. There are five distinct job categories which swing pool drivers are used to fill in for. These are: (1) route truck, (2) bulk delivery, (3) syrup, (4) full service, and (5) special events. Each of those positions has differing duties and job requirements. Because some of these jobs are easier than others, the swing pool drivers bid on each day's posted openings and awarded the job based upon seniority.

When the opening in the swing pool became available in August of 1996, Plaintiff bid on, and won, the open spot in the swing pool based upon his seniority. However, prior to his beginning work, Pepsi asked that Plaintiff's physician, Dr. Steven Peterson, list Plaintiff's physical restrictions in light of his injuries. On August 9, 1996, Dr. Peterson filled out a work status report form which stated that the Plaintiff could return to work only with the following restrictions:

♦ No lifting over 40 lbs, occasional (0–33%) lifting of up to 40 lbs, and frequent (34–66%) lifting of up to 20 lbs.

♦ No climbing or working at heights.

♦ No vibration or hand powered tools.

♦ No forceful hand grasping using the right hand.

♦ Frequent (34–66%) work using hand.

♦ No pushing or pulling using the right hand of over 40 lbs, occasional (0–33%) pushing or pulling of up to 40 lbs, and frequent (34–66%) pushing or pulling pushing or pulling of up to 20 lbs.

♦ No over the shoulder work.

♦ Occasional overtime work of no more than 2 hrs.

♦ Frequent (34–66%) driving.

♦ No hazardous activities.

(Defendant's Ex. E).

In addition, the physician's report stated that Plaintiff "may return to swing pool to perform duties as described for bulk delivery driver, full service driver and Special Events, Syrup Driver ... NO ROUTE TRUCK DUTIES!" (Defendant's Ex. E).

Although Plaintiff's physician apparently cleared him to work as a swing pool driver, the Defendant contends that once it reviewed the Plaintiff's specific physical limitations as set forth by his physician, it was clear that he was unable to perform most of the duties of a swing pool driver. Accordingly, the General Manager, Mr. Andraschko, made the decision not to permit the Plaintiff to work in the swing pool. Thereafter, Plaintiff applied for and received, disability benefits under Pepsi's long term disability plan. In applying for disability under that plan, Plaintiff certified that he was "totally disabled and unable to work." (Defendant's Ex. F). Plaintiff also applied for, but did not receive, social security disability benefits. (Defendant's Ex. A, pg. 100).

Plaintiff remained on worker's compensation and disability until June of 1997 when a transport driver position became open. The transport driver position is one that only involves driving, there is no loading or lifting requirements at all. Due to his seniority, Plaintiff received the transport driver position. In addition, because Plaintiff's medical restrictions did not appear to conflict with the job, he was permitted to return to work. However, after three days of working as a transport driver Plaintiff chose to voluntarily remove himself from the position. Plaintiff claimed that the position of the steering wheel in the large truck caused him shoulder pain (Defendant's Ex. A pgs. 125–126). Accordingly, Plaintiff received an updated work status report from his physician which changed his driving restrictions from fre-

quent (34–66%) to occasional (0–33%) (Defendant's Ex. G).

Plaintiff filed this lawsuit on April 21, 1997, in Wayne County Circuit Court. Thereafter, Defendant removed the case to this Court on the basis of diversity. 28 U.S.C. § 1332. Plaintiff's suit alleges that the Defendant's refusal to allow him to work in the swing pool violated the Michigan Handicapper's Civil Rights Act (MHCRA), M.C.L. 37.1103 et seq. In addition, Plaintiff asserts a claim for age discrimination under the Michigan Elliott–Larsen Civil Rights Act, M.C.L. 37.2202, based on the Defendant's failure to promote him to the territory manager position in June of 1996.

### III. STANDARD OF REVIEW

Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in light most favorable to the non-moving party. *Id.* at 106 S.Ct. at 2510.

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material for trial. *Id.*; *Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the nonmoving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

In addition, the Court notes that jurisdiction is based upon diversity of citizenship between the parties. *See* 28 U.S.C. 1332. Accordingly, Michigan law governs the substantive legal issues, while federal law governs the procedural matters. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Gafford v. General Elec. Co.*, 997 F.2d 150, 165–167 (6th Cir.1993).

### IV. OPINION

Plaintiff alleges that the Defendant discriminated against him in violation of the Michigan Handicapper's Civil Rights Act (MHCRA) by not allowing him to work in the swing pool. Defendant argues that the Plaintiff cannot establish that his handicap is unrelated to his ability to perform the duties of the swing pool job and therefore, there is not a violation of MHCRA.

The MHCRA applies to protect handicapped individuals from discrimination. The Act defines a handicap as:

(i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

(A) [S]ubstantially limits 1 or more of the major life activities of that individual *and is unrelated to the individuals ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.*

\*   \*   \*   \*   \*   \*

(1) "Unrelated to the individual's ability" means, with or without accommodation, an individual's handicap *does not prevent the individual* from doing 1 or more of the following:

(i) *[P]erforming the duties of a particular job or position.*

M.C.L. 37.1103 (emphasis added).

Thus, in order to establish a prima facie case under the MHCRA the Plaintiff must establish that (1) he is handicapped within the meaning of the MHCRA, (2) the handicap is unrelated to his ability to perform the duties of the job, and (3) he has been discriminated against in one of the ways set forth in the statute. *Sanchez v. Lagoudakis,* 217 Mich.App. 535, 539, 552 N.W.2d 472, 476 (1996). If the Plaintiff is able to present such evidence, the burden shifts to the Defendant to show a legitimate, nondiscriminatory reasons for its treatment of the Plaintiff. *Crittenden v. Chrysler Corp.,* 178 Mich.App. 324, 331, 443 N.W.2d 412, 415 (1989). In this case it is the second element, whether or not Plaintiff's handicap is unrelated to his ability to perform the job, that is at issue.

Defendant argues that the Plaintiff cannot establish that he was able to perform the duties of the swing pool, accordingly, there is no violation of the MHCRA. As a swing pool employee, on any given day, the Plaintiff would be subject to working any one of the five types of jobs that make up the swing pool position. These include: route truck driver, bulk delivery driver, syrup, full service/vending, and special events. Plaintiff's physician specifically refused to release him to the route truck diver position, the job he held prior to his injury. Thus, Plaintiff's restrictions explicitly precluded him from performing the route truck position in the swing pool. Moreover, the Defendant contends, and the Court agrees, that Plaintiff's restrictions also precluded him from performing all other jobs in the swing pool with the exception of one.

The Defendant made the determination that Plaintiff's restrictions prevented him from performing the jobs in the swing pool by comparing his restrictions to the requirements and duties for each of the jobs. The Court will briefly address, in turn, each of the duties and responsibilities for each of the five jobs that make up the swing pool position. These requirements are set forth in the job descriptions of the Defendant (Defendant's Ex. H), the deposition and affidavit of Mr. Andraschko (Defendant's Ex. B pgs. 56–78, J), as well as Plaintiff's own deposition testimony (Defendant's Ex. A pgs. 55–56, 72, 105–107).

### 1. Route truck

This job involves delivering Pepsi products in bottles and cans to small grocery and convenience stores. The driver is responsible for unloading the product from the truck, bringing it into the customer's facility, and setting up the product on the shelves, displays, or coolers (Plaintiff's Dep. pg. 19–20). This was the job Plaintiff held prior to injuring his rotator cuff for the third time. This is the job Plaintiff's physician refused to release him to following his third surgery. Plaintiff does not contest that he was unable to perform the requirements of this job.

### 2. Bulk delivery

The bulk delivery position requires driving a semi-trailer and delivering bulk orders of Pepsi products to large retail stores. The product is stored on pallets inside the truck. Upon arriving at a customer, the bulk delivery driver uses a hand-powered cart to transport the product to the customer's designated area. The driver must also load large plastics bags of empty cans and bottles weighing over 40 lbs into the trailer by hand (Defendant's Ex. A. pgs. 105–106). In addition, the driver must often position a dock plate weighing up to 150 lbs to bridge the gap between the trailer and the dock. The driver is also responsible for stocking shells and empties on pallets and stacking empty pallets in the truck. The lifting requirements comprise 30% of the job. Pushing and pulling of the truck tailgate, dock doors, hand-powered cart and dock plate account for 20% of the job. Reaching when climbing into or out of the tractor, opening or closing the semi-trailer door, opening or closing the dock door, and throwing or stacking plastic bags of empties into the semi-trailer account for 30% of the job.

Based on the Plaintiff's stated restrictions concerning driving, lifting, pushing/pulling, and above the shoulder reaching, the Defen-

dant determined that the requirements of this job were incompatible with Plaintiff's physical restrictions.

### 3. Syrup

The syrup delivery driver is responsible for servicing customers using fountain dispensers by delivering syrup tanks, carbon dioxide tanks, and cases of "bag in the box" to the customer. Upon arriving at the customer's location, the driver must lift and maneuver the tanks and boxes of product and transport them inside using a hand-cart. The driver must also pick up used tanks and load them onto the truck for return to Pepsi. The lifting and carrying requirement of this position account for 30% of the day. The syrup is packaged either in boxes or tanks. The tanks weigh between 49 and 60 pounds, while the boxes weigh between 43 and 55 pounds. (Defendant's Ex. C). The carbon dioxide tanks weigh between 51 to 102 pounds full, and 25 to 50 pounds empty.

Based on the Plaintiff's stated restrictions concerning lifting/carrying, pushing/pulling, and reaching, the Defendant determined that the requirements of this job were incompatible with Plaintiff's restrictions.

### 4. Full service/vending

The full service/vending job involves driving a van and delivering cans and bottles to customers that have vending machines. The lifting, carrying, and reaching requirements are minimal. The driver basically takes six pack cans from the van, transfers them to a hand truck, and pushes them into the customer's facility where he loads the vending machine.

Based on the Plaintiff's stated restrictions the Defendant determined that the requirements of this job were compatible with Plaintiff's restrictions and that he could probably do this job. However, there were only 3 full service/vending routes at the entire Detroit facility, as opposed to approximately 150 routes between the other four positions. Thus, a swing pool driver would only be able to do a vending route if one of the three regular vending drivers was out sick, injured or on vacation. Therefore, it was highly unlikely that a vending route would be available in the swing pool on any given day. Moreover, the jobs available each day in the swing pool were bid on by the swing pool employees and awarded based on seniority. Thus, the easier jobs, such as the vending route, if open, would go to the employee with the most seniority. Because Plaintiff did not have the most seniority it would have been unlikely that he drove one of those routes even if they were available (Defendant's Ex. J).

### 5. Special events

Special events drivers work those occasional situations where Pepsi establishes a temporary location to sell Pepsi product, usually at large events like fairs or sporting events. According to the Defendant, special events jobs arise rarely, and almost entirely in the summer. The special event drivers are required to lift, carry and set up syrup and carbon dioxide tanks described above. In addition, special event drivers must carry ice chests which sometimes weigh in excess of 100 lbs. Moreover, special events drivers are often required to work in excess of 12 hours (Defendant's Ex. J).

Based on the Plaintiff's restrictions concerning lifting/carrying, pushing/pulling, reaching, and overtime the Defendant determined that the requirements of this job were incompatible with Plaintiff's restrictions.

Defendant contends that based on the job requirements and duties of the five jobs that comprise the swing pool job, and Plaintiff's physical restrictions, it is clear that Plaintiff's handicap—his shoulder injury and subsequent limitations—is not unrelated to his ability to perform the duties of the job. Accordingly, because Plaintiff cannot demonstrate that his handicap is unrelated to his ability to perform the duties of the job there is no violation of the MHCRA. *Carr v. General Motors Corp.*, 425 Mich. 313, 321–322, 389 N.W.2d 686 (1986); *Ashworth v. Jefferson Screw Products, Inc.*, 176 Mich. App. 737, 743, 440 N.W.2d 101 (1989); *Sanchez v. Lagoudakis*, 217 Mich.App. 535, 539, 552 N.W.2d 472, 476 (1996).

Plaintiff, on the other hand, argues that a genuine issue of material fact is present and

that summary judgement is inappropriate because although the Defendant says the Plaintiff was not able to perform the swing pool jobs, both the Plaintiff and Plaintiff's physician stated that he could. The Court agrees with the Defendant.

Notwithstanding Plaintiff's subjective *belief* that he could do the swing pool jobs and his physician's *general* statement that he could perform the jobs in the swing pool, the *specific* restrictions and limitations listed by the physician are inconsistent with, and explicitly conflict with, the requirements and duties of swing pool drivers. (Defendant's Ex. E). No evidence was presented that the Plaintiff's physician had knowledge or understanding of what the swing pool duties were. Rather, all the Plaintiff has presented is the conclusory statement from his physician that Plaintiff "may return to swing pool to perform duties as described for bulk delivery driver, full service driver and Special Events, Syrup Driver ... NO ROUTE TRUCK DUTIES!" (Defendant's Ex. E). Moreover, this conclusion is contradicted by the Plaintiff's restrictions and the job requirements. The Court agrees with the Defendant that the Plaintiff cannot use his physician's conclusory statement to do an end run around the specific restrictions that make him unqualified for the swing pool position.

Plaintiff's own statements that he could perform the swing pool jobs regardless of the restrictions imposed by his physician are baseless. Plaintiff admitted that a syrup driver had to handle tanks and boxes of product, and those tanks and boxes weighed between 43 and 102 pounds (Defendant's Ex. A pg. 72, Ex. C). Thus, application of the less than 40 pound lifting, carrying, pushing, pulling restriction to the job requirements establishes that Plaintiff could not perform the syrup job. Plaintiff also admitted that the bulk driver has to manage large bags of empty cans weighing over 40 pounds, handle and stack empty pallets, and position a dock plate in excess of 150 pounds (Defendant's Ex. A. pgs. 55–56, 105–106). Thus, in light of Plaintiff's lifting, grasping, pulling and carrying restrictions it's clear he could not perform the bulk delivery job. Likewise, Plaintiff admitted that special events drivers hand

to handle weight in excess of 40 pounds (Defendant's Ex. A pg. 107). Therefore, Plaintiff's own admissions, when compared with his listed restrictions, demonstrates that there is no genuine issue of fact that Plaintiff could not perform the swing pool jobs, with the exception of one. Thus, to have allowed the Plaintiff to work in the swing pool when he could only perform the one of the five jobs, i.e. the vending route which he was unlikely to receive, would have required the Defendant to pay the Plaintiff for not working (Defendant's Ex. J ¶ 5).

Evaluating Plaintiff's restrictions, imposed on him by his own physician, in light of the job requirements for a swing pool employee, it is clear that his handicap is related to his ability to perform all but one of the jobs. Accordingly, no reasonable jury could find that Plaintiff was otherwise qualified for the job when the restrictions on lifting, carrying, reaching, pushing, pulling, grasping, and driving clearly prevent him from performing the jobs in the swing pool with the exception of the limited availability vending position. *Ashworth v. Jefferson Screw Products, Inc.*, 176 Mich.App. 737, 743, 440 N.W.2d 101 (1989); M.C.L. 37.1103. Therefore, the Defendant's decision not to allow the Plaintiff to work in the swing pool is not a violation of the MHCRA. *Id.* The Court cannot fault the Defendant for abiding by the restrictions imposed by the Plaintiff's own physician. Moreover, this is not a case where the Defendant is seeking to bar the Plaintiff from working at all. In fact, Plaintiff sought and received the transport driver position, a position that required no lifting whatsoever, however he bid off that job after three days due to shoulder pain. If Plaintiff could not work as a transport driver—a pure driving position requiring no lifting—it is inconceivable that he could perform the swing pool jobs which in addition to driving also included significant lifting, carrying, pushing, pulling, reaching and grasping.

Because Plaintiff cannot establish that his shoulder injury and resulting physical restrictions are unrelated to his ability to perform the duties of a swing pool driver, summary judgment is proper and his claim under the MHCRA must be dismissed.

Plaintiff's complaint also alleges a claim of age discrimination pursuant to the Michigan Elliott–Larsen Civil Rights Act, M.C.L. § 37.2202. Plaintiff's complaint alleges that he was not hired as the territory coordinator in June of 1996 due to his age.

 In order to establish a prima facie case of age discrimination the Plaintiff must demonstrate that: "(1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person." *Matras v. Amoco Oil Co.*, 424 Mich. 675, 683, 385 N.W.2d 586 (1986). Once the Plaintiff establishes a prima facie case the burden of production shifts to the Defendant to articulate a legitimate, non-discriminatory reason for its actions. *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 695–699, 568 N.W.2d 64 (1997). If the Defendant meets its burden, the Plaintiff must then present specific facts that indicate Defendant's proffered reasons are pretextual. *Id.*

■ Assuming, without deciding, that Plaintiff has established a prima facie case, the Defendant has articulated a legitimate, nondiscriminatory reason for not promoting Plaintiff to the position of territory coordinator. Specifically, it was felt by management that Plaintiff was not interested in the job based on his statements made during the interview. Mr. Andraschko, who was part of the team that interviewed Plaintiff for the position of territory coordinator, testified at this deposition that the Plaintiff did not appear interested in the job, was not enthusiastic, had reservations about the hours and the work and was hesitant to leave the union (Defendant's Ex. B, pg. 46). Indeed, Plaintiff own deposition testimony supports the Defendant's stated reason:

Q. What basis do you have for making the claim that you didn't get the job due to your age? Aside from the fact that obviously you're older, he's younger?

A. It's pretty cut and dry. They wanted a motivated person, and I was asked that question in the person [sic]. How motivated are you.

Q. What was your response?

A. As motivated as I want to be.

(Defendant's Ex. A, pg. 123).

The Court finds that the Defendant has come forward with a legitimate, nondiscriminatory reason for Plaintiff's failure to get the territory coordinator position. Therefore, the burden shifts to the Plaintiff to establish that this reason is merely pretext for age discrimination. Plaintiff presents no evidence that the Defendant's stated reason is pretext. In fact, Plaintiff did not even respond to that portion of Defendant's brief dealing with his age discrimination claim. Accordingly, Plaintiff has not come forward with any evidence that the Defendant's stated reason is pretext and his age discrimination claim is dismissed.

## V. CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is GRANTED. IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED.

IT IS SO ORDERED.