Dale FURBY, Plaintiff–Appellant,

v.

Al WHITE; Oliver Coleman; Bill Kennedy; Chrysler Corporation; Defendants–Appellees,

Frank Pitonyak, Defendant.

No. 99–1712.

United States Court of Appeals, Sixth Circuit.

Jan. 30, 2001.

Before KEITH, BOGGS, COLE, Circuit Judges.

OPINION

R. GUY COLE, JR., Circuit Judge.

Plaintiff–Appellant Dale Furby ("Furby") appeals the district court's grant of partial summary judgment for, and its judgment upon the conclusion of a bench trial in favor of, Defendants–Appellees Al White, Oliver Coleman, Bill Kennedy, and Chrysler Corporation (collectively referred to herein as "Chrysler"). Furby assigns error to: (1) the district court's grant of Chrysler's motion for summary judgment on Count IV of his amended complaint, alleging that Chrysler maintained a policy of handicap discrimination, in violation of MICH. COMP. LAWS ANN. § 37.2701 *et seq.* (West 1987); and (2) the district court's refusal to grant Furby relief on his claim brought pursuant to Michigan's Bullard–Plawecki Employee Right to Know Act (BPERKA) concerning events surrounding his December 1996 employment termination. For the reasons that follow, we AFFIRM the district court's grant of partial summary judgment and AFFIRM the district court's judgment in favor of Chrysler on Furby's BPERKA claim.

## I. BACKGROUND

### A. Facts

Chrysler hired Dale Furby on August 14, 1972, as a material handler at its Stamping Plant in Sterling, Michigan. Furby was a bargaining unit employee represented by the United Auto Workers ("UAW"). Furby received a written warning in August 1979 for operating a portable conveyor in a careless manner, and a second written warning the following month for his failure to return to work on time following his break. On September 1, 1986, Chrysler admitted Furby into the Chrysler Apprenticeship Program at its Stamping Plant in Sterling, Michigan.[1] In

---

1. Successful completion of the four-year Apprenticeship Program, which requires almost 8,000 hours of on-the-job and classroom

a January 1987 performance evaluation, Furby's supervisor noted that Furby was "overly nervous," had difficulty "following and/or remembering instructions," and had a "low level of mechanical comprehension."[2] In subsequent evaluations in February, March, and July 1987, Furby's supervisors stated that Furby continued to have difficulty in the program. A July 24, 1987, reduction in force by Chrysler resulted in the removal from the program of all apprentices, including Furby, prompting Chrysler to reassign Furby to the hourly workforce. On March 18, 1991, after resumption of the Apprenticeship Program, Chrysler readmitted Furby and reassigned him to a different supervisor at the Stamping Plant in Warren, Michigan. A March 1991 performance evaluation, completed shortly after Furby's readmission to the Apprenticeship Program, noted that although Furby had "spent 2,159 hours in the trade," he still did "not know the basics." By memorandum dated May 9, 1991, Chrysler provided Furby with notice that if his performance did not improve, he would be removed from the Apprenticeship Program. Citing a lack of improvement, Chrysler, on June 21, 1991, removed Furby from the Apprenticeship Program and reassigned him to his former plant.

Furby resorted to the internal grievance procedure established pursuant to the collective bargaining agreement between Chrysler and UAW to appeal his removal from the Apprenticeship Program. The Chrysler–UAW National Apprenticeship Committee denied his appeal on February 25, 1992. By letter dated June 9, 1993, a UAW representative informed Furby that its investigation of the events surrounding Furby's dismissal from the Apprenticeship

Program determined that he was discharged for "performance-related" reasons. In November and December 1992, Furby filed charges with the Michigan Department of Civil Rights ("MDCR"), alleging that Chrysler's removal of him from (and its failure to readmit him into) the Apprenticeship Program violated his civil rights under Title VII, specifically, that he had been removed because of his race (Furby is a white male). On July 9, 1993, the Equal Employment Opportunity Commission ("EEOC") issued its determination, finding that Furby had been removed from the Apprenticeship Program for poor performance.

On February 27, 1994, after observing Furby away from his designated workstation during normal business hours, Chrysler suspended Furby for his unauthorized absence from the plant. The suspension was later converted to a disciplinary layoff for the remainder of the shift. Furby never filed a grievance concerning Chrysler's disciplinary actions.

In August 1994, Chrysler received a report from a supervisor, William Kennedy, and a black employee, Al White, that Furby had referred to White in a racially derogatory manner. Thereafter, on August 22, 1994, Oliver Coleman, a black employee, complained that Furby had directed a racial slur towards him. On August 23, 1994, Chrysler notified Furby that it was placing him on suspension for "intimidating, coercing and using abusive language to others with racial over tone [sic]." Furby's return to work was conditioned upon his provision to Chrysler of satisfactory medical documentation confirming that he was able to resume his work responsibilities, and that he was safe to him-

---

training, confers upon the participant journeyman status.

2. Furby relies only upon this "overly nervous" comment to support his claim that Chrysler perceived that he suffered from a disability.

self and to others. Negotiations between Chrysler and UAW resulted in an agreement whereby Furby's disciplinary suspension would be converted to a medical leave from which his return to work would be conditioned upon receipt of the necessary medical documentation. Furby provided the requisite documentation on October 27, 1994, and returned to work on November 1, 1994. In the months between Furby's suspension and his return to work, Furby filed a complaint with the MDCR, alleging that Chrysler actually discharged him because of its perception that he has a disability, and in retaliation for Furby's filing of previous charges of employment discrimination. Also during this time, Dr. David Schwartz, a psychiatrist, spoke with Chrysler on September 7, 1994, and concluded, after consulting with Furby on two occasions, that Furby was "out of touch with reality" and unable to return to work in his present state. On September 26, 1994, Furby allegedly spoke with a member of Chrysler's Labor Relations Department and stated that he had received several preliminary psychiatric assessments, all of which had concluded that in-patient treatment would be required. Furby denies that he made such a statement.

On August 26, 1994, in response to the disciplinary action taken by Chrysler, Furby filed a charge of discrimination with the EEOC, alleging: (1) that he had been terminated for falsely being accused of directing a racial epithet towards a co-worker, and (2) that Chrysler had attempted to force him to consult a psychiatrist, in violation of the Americans with Disabilities Act and in retaliation for his previous filings. On January 9, 1995, Furby filed a complaint with the MDCR and the EEOC, alleging retaliation and disability discrimination by UAW, and, in a separate charge, alleging retaliation by Chrysler. The EEOC responded by letter dated March 15, 1995, that its investigation did not re-

veal any evidence of retaliation or discrimination.

On January 29, 1996, Chrysler suspended Furby for reporting to work late, insubordination, and leaving the line without proper authorization, all stemming from an alleged incident on January 27, 1996. Chrysler converted the suspension to a four-day disciplinary layoff and transferred Furby, at his own request, to a new department. On March 23, 1996, Furby's supervisor, Nick Morosky, prepared a report in which he stated that he had repeatedly counseled Furby to arrive at work on time, but that Furby had continued to report to his position in an untimely manner. Morosky also stated in the report that Furby had made "threatening facial expressions" apparently in an attempt to intimidate him. Four days later, on March 27, 1996, Morosky prepared another report in which he stated that Furby had again reported to the line late, refused to follow Morosky's instructions, and left the plant without prior authorization. Chrysler placed Furby on suspension on March 27, 1996, for this alleged conduct.

After discussions among Furby, UAW, and Chrysler's Labor Relations Department, Furby signed a Conditional Reinstatement, which provided that the March 27, 1996, suspension would be recorded as a one-day disciplinary layoff. The Conditional Reinstatement also provided that, in exchange for Furby's agreement not to file a grievance, no further action concerning this incident would be taken. On April 26, 1996, and again on May 5, 1996, Furby filed complaints with the EEOC, alleging that he had been the subject of race discrimination.

In September 1996, Furby, at his own request, was transferred to work on a blanker press machine. However, on October 3, 1996, after Chrysler received com-

plaints from other employees that Furby was operating the machine in an unsafe manner, Furby was returned to his former position. Chrysler suspended Furby on October 3, 1996, for insubordination, working in an unsafe manner, and leaving his assigned workstation without prior authorization. On October 11, 1996, Furby, in consultation with UAW, entered into an agreement with Chrysler whereby Chrysler agreed to convert his October 3, 1996, suspension to a disciplinary layoff in exchange for Furby's agreement not to file a grievance. The terms of the agreement also required Furby to continue to abide by the provisions of the April 2, 1996, Conditional Reinstatement.

On December 6, 1996, Chrysler supervisor Dell Gillenwater stated that Furby was again reporting late to his position, and when instructed where to work, Furby allegedly became agitated and began to yell at Gillenwater. Chrysler suspended Furby as a result of this conduct. After negotiations with UAW, Chrysler, on December 12, 1996, invited Furby to return to work, subject to certain conditions. Specifically, Furby was to agree to return to work as a press operator and to remain bound by the terms of the April 2, 1996, Conditional Reinstatement for an additional six months; in return, Chrysler agreed to record his suspension as a disciplinary layoff. Furby exercised his right to refuse the agreement, because he believed that the allegations of wrongdoing contained therein were false. Chrysler converted Furby's suspension to a discharge, effective December 6, 1996, and Furby filed a grievance, pursuant to the terms and conditions of the collective bargaining agreement. Ten months later, before final resolution of Furby's grievance, Furby decided he no longer wished to pursue the grievance, signed the same Conditional Reinstatement he had signed on April 2, 1996, and returned to work.

## B. Procedural History

### 1. *Furby I*

On June 17, 1994, Furby initiated an action in the Wayne County Circuit Court (*"Furby I"*) against UAW, alleging that it violated the Michigan Handicappers' Civil Rights Act ("MHCRA") by failing to represent him when Chrysler removed him from the Apprenticeship Program.[3] Furby filed an amended complaint on August 23, 1994, in which he added Chrysler as a defendant and alleged that it violated the MHCRA by: (1) removing him from the Apprenticeship Program for a perceived handicap (Furby's "overly anxious" manner), and (2) retaliating against him for his filing of two complaints alleging discrimination. By order dated October 25, 1995, the court dismissed *Furby I* in its entirety.[4] In a May 30, 1997, unpublished opinion, the Michigan Court of Appeals affirmed the decision of the Wayne County Circuit Court.

### 2. *Furby II*

Furby filed the present action against Chrysler on August 14, 1995, in Macomb County (Mich.) Circuit Court (*"Furby II"*), alleging that Chrysler employees had made false and defamatory statements

---

**3.** By order of summary disposition dated February 17, 1995, the Wayne County Circuit Court dismissed with prejudice all claims against UAW.

**4.** Count I of Furby's complaint, which alleged that Chrysler discharged Furby from the Apprenticeship Program, in violation of the MHCRA, because of Chrysler's perception that Furby's general anxiety disorder would interfere with the performance of his job, was dismissed for Furby's failure to state a claim within the applicable statute of limitations period.

concerning his dangerous work habits, his use of racial slurs, and his abusive behavior towards co-workers (Count I). Chrysler removed the action to the United States District Court for the Eastern District of Michigan on December 11, 1995.[5] Furby amended his complaint on October 22, 1996, to include claims for retaliation (Count II), inclusion of false information contained within employment records (Count III), and maintenance of a policy of discrimination, in violation of the MHCRA (Count IV). On December 2, 1997, the district court granted Chrysler's motion for summary judgment as to Count IV of Furby's amended complaint, which alleged, in the alternative, both that Chrysler perceives Furby to have a handicap, and that "although Plaintiff believes he does not have a handicap, the proofs may establish that he does have a handicap and/or that he may need accommodation for purposes of employment." In May 1999, a bench trial was conducted on the remaining three counts. The district court entered judgment in favor of Chrysler on all counts.

Furby now appeals the district court's December 2, 1997, grant of Chrysler's summary judgment motion as to Count IV. Furby also appeals the district court's May 1999 judgment in favor of Chrysler on Count III, which alleged that Chrysler now maintains false information in Furby's employee file, in violation of BPERKA. Thus, only the issues raised in Counts III and IV of Furby's amended complaint are before us on appeal.

## II. DISCUSSION

### A. MHCRA Claim

The district court granted Chrysler's motion for summary judgment as to Count IV on December 2, 1997. In granting Chrysler's motion, the district court wrote:

Plaintiff has alleged that Defendants discriminated against him because they perceived him as having a handicap. Plaintiff further alleges that this action was in violation of the Michigan Handicappers' Civil Rights Act, MICH. COMP. LAWS ANN. § 37.1101–.1607 (West 1987). While claiming a violation of the Handicappers' Civil Rights Act, Plaintiff also asserts that he is not handicapped. Moreover, Defendants have not asserted that he is handicapped or that they believe that they perceive him has [sic] having a handicap. Plaintiff further contends that even though he does not have a handicap, that the proofs may establish that he does and that a reasonable accommodation can be provided. Without identifying the alleged handicap, nor requesting a reasonable accommodation for the alleged handicap, this Court cannot conclude that Plaintiff is a victim of handicap discrimination in violation of the Handicappers' Civil Rights Act. This Court cannot reasonably conclude that Defendants may be liable for a handicap that they do not believe that Plaintiff has, and that Plaintiff asserts that he does not have. Therefore, this Court will grant Defendants' Motion for Summary Judgment on this handicap discrimination claim.

We review *de novo* the district court's grant of summary judgment, relying upon the same standards applied by the district court. *See Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 462 (6th

---

**5.** Even though this action involves several state tort claims, Chrysler argued successfully that the question whether Furby was properly denied reentry into the Apprenticeship Program because of allegedly defamatory re-marks made by Chrysler employees was governed by a collective bargaining agreement between Chrysler and UAW and subject to the Labor Management Relations Act, and thus removable to federal court.

Cir.1998) (citing *Middleton v. Reynolds Metals Co.*, 963 F.2d 881, 882 (6th Cir. 1992)).[6] Summary judgment, is proper if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See id.* (citing *City Mgmt. Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 250 (6th Cir.1994)). We consider all facts and inferences drawn therefrom in the light most favorable to the non-moving party. *See id.* To survive summary judgment, the non-movant must set forth more than a mere scintilla of evidence in support of its position; there must be sufficient evidence on which a jury could reasonably find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

We will focus first on the question whether, as Chrysler argues, we need not review the district court's grant of summary judgment because Furby's claims are barred by the doctrine of *res judicata* or by the applicable statute of limitations. Assuming Furby's claims are not barred as a matter of law, we will then determine whether the district court properly concluded that summary judgment was appropriate for Furby's failure to create a genuine issue of material fact on the question of whether Chrysler discriminated against him, in violation of the MHCRA.

**1. *Res Judicata***

■■■ The doctrine of *res judicata* prevents the relitigation of the same claims that have been determined (or could have been determined) on the merits in a prior proceeding between the same parties. *See Brookins v. General Motors Corp.*, 843 F.2d 879, 880 (6th Cir.1987). Under Michigan law, a party seeking to invoke *res judicata* to preclude further litigation must prove that: (1) the parties or their privies are the same; (2) the prior judgment was a final determination on the merits; and (3) the two suits involve the same cause or causes of action that were brought, or could have been brought with the exercise of due diligence, in the prior litigation. *See Smith, Hinchman & Grylls, Assocs., Inc. v. Tassic*, 990 F.2d 256, 257–58 (6th Cir.1993). Chrysler now seeks to prevent litigation of claims that were heard and resolved by the Wayne County Circuit Court's October 25, 1995, dismissal of *Furby I*. As noted in the discussion of this case's procedural history, Chrysler was a named party in both *Furby I* and *Furby II*; the individual named defendants in the present action (*Furby II*) were not parties to *Furby I*.

**a. Chrysler**

■■■ Chrysler was a party to *Furby I*, and the two suits arguably involved the

---

**6.** Furby seems to suggest that the district court's grant of summary judgment as to Count IV was akin to a grant of a motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, he argues that, in conducting *de novo* review of the dismissal in the instant case, we must "accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff," and not affirm the grant of a motion to dismiss unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lawrence v. Chancery Court of Tennessee*, 188 F.3d 687, 691 (6th Cir.1999) (quoting *Conley*

*v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). It is true that in its order granting summary judgment as to Count IV, the district court stated that Furby had failed "to state a viable claim for handicap discrimination," suggesting that it may have applied a dismissal standard for review of a summary judgment motion. Even if the district court improperly treated Chrysler's motion for summary judgment as a motion to dismiss, it is well-established that a reviewing court may affirm the district court on *any* ground supported by the record, even if that ground is different from the grounds relied upon by the district court. *See Lawrence*, 188 F.3d at 691.

same causes of action.[7] The question of whether the prior judgment was a final determination on the merits, however, must be resolved in favor of Furby. The Wayne County Circuit Court's finding that Furby had failed to state a claim under the MHCRA within the applicable statute of limitations would be deemed a final judgment on the merits under *federal* law. *See* FED. R. CIV. P. 41(b). Under Michigan law, however, such a dismissal does not operate as an adjudication on the merits. *See Malesev v. Garavaglia*, 12 Mich.App. 282, 162 N.W.2d 844, 845–46 (Mich.Ct.App. 1968). Accordingly, the doctrine of *res judicata* may not be invoked to preclude litigation of the instant claim against Chrysler.

### b. Individual Named Defendants

It is undisputed that the individual named defendants in this case were not parties to the prior litigation. Neither are the individual named defendants privies of the parties to the prior action—Chrysler and UAW—as they did not acquire an interest in the subject matter of the prior lawsuit by "inheritance, succession, or purchase." *Eliason Corp. v. Bureau of Safety & Regulation of Mich. Dep't of Labor*, 564 F.Supp. 1298, 1305 (W.D.Mich.1983) (quoting *Howell v. Vito's Trucking Excavating*

*Co.*, 386 Mich. 37, 191 N.W.2d 313, 316 (Mich.1971)). In an unpublished opinion, we have suggested that the lack of identity of parties, however, is not always fatal to a *res judicata* claim, noting that an exception to the "identity of parties" requirement may be found where "the liability of the defendant [in the present lawsuit] is entirely dependent upon the culpability of one exonerated in a prior suit." *Rowser v. Teamsters, Chauffeurs, Warehousemen & Helpers of America*, No. 94–1505, 1995 WL 351302, 60 F.3d 829 (6th Cir. June 9, 1995) (unpublished opinion). Such an exception would not apply to the individual named defendants—if Chrysler were found in an earlier proceeding to not have in place a policy of discrimination, then certainly it would be both inconsistent and illogical for a court to find that Chrysler employees, *independent of Chrysler*, maintained such a policy. Nevertheless, we need not reach this issue, as the defendants cannot demonstrate that the prior proceeding ended with a final judgment on the merits. *See* discussion *supra*, at II. A.1.a; *see also* n.7 (discussing whether the present litigation involves the same causes of action brought in the prior one). Accordingly, *res judicata* is inappropriate to bar litigation of the claims in the instant case.

---

7. Furby argues that the two suits involve different causes of action: the lawsuit filed in Wayne County Circuit Court sought relief for Chrysler's *discharge* of Furby from the Apprenticeship Program on the basis of Furby's actual handicap, while the instant lawsuit seeks relief for Chrysler's *refusal to readmit* Furby to the Apprenticeship Program because of its maintenance of a policy of handicap discrimination. One reading of Furby's complaints would suggest that Furby relies upon each complaint to allege the same cause of action for Chrysler's policy of disability discrimination, but attempts to distinguish the two by pointing to different manifestations of that discrimination. While it is true that Michigan law bars "both claims actually liti-

gated in a prior action and those claims arising out of the same transaction which plaintiff could have brought, but did not," *Schwartz v. City of Flint*, 187 Mich.App. 191, 466 N.W.2d 357, 359 (Mich.Ct.App.1991), it is unclear whether Furby should have reasonably brought the failure-to-readmit action when he filed the discriminatory discharge action, or, whether, as he alleges, that each time Chrysler refused him readmission, a new cause of action was created. We need not resolve whether Furby has set forth two distinct causes of action, because as discussed *infra*, *Furby I* did not conclude with a final adjudication on the merits, thus rendering *res judicata* inapplicable.

## 2. Statute of Limitations

A plaintiff alleging disability discrimination in violation of the MHCRA must file a cause of action within three years of the alleged discrimination. *See* MICH. COMP. LAWS ANN. § 600.5805(8). Chrysler dismissed Furby from the Apprenticeship Program on June 21, 1991. Furby amended his complaint to add Chrysler as a party in August 1994, more than three years after his dismissal. Therefore, the Wayne County Circuit Court correctly concluded that Furby's claim as against Chrysler was time-barred.[8]

Furby emphasizes that the present action does not grieve his dismissal from the Apprenticeship Program; rather, he seeks relief for Chrysler's repeated refusals to readmit him to the Apprenticeship Program because of its policy of handicap discrimination. It is unclear whether Furby is in fact alleging an independent violation (*i.e.*, one separate and apart from Chrysler's allegedly discriminatory discharge of him) or a continuing violation.[9] It appears that Furby has simply repackaged his *Furby I* discriminatory discharge claim as a failure-to-readmit (or failure-to-hire) claim in an attempt to avoid the reach of the applicable statute of limitations. In the first instance, Furby identifies no Chrysler policy of discrimination that could fairly be said to be discriminatory. One is left to assume on the basis of Furby's complaint that Chrysler had a policy of discriminating against "overly anxious" employees or against employees who suffered from anxiety disorders, even though Furby repeatedly states that he fit into neither such class of employees. Second, Furby's position, taken to its logical conclusion, would eliminate altogether the statute of limitations. If a plaintiff could extend the applicable statute of limitations for an MHCRA claim simply by requesting and being denied entry into a program (without demonstrating that his denial was based on a violation separate and apart from the challenged policy), then when, if ever, would the statute of limitations run? Such an argument is misguided as a matter of policy. Third, as discussed above, Furby puts forward no documentary evidence that he in fact sought reentry into the Apprenticeship Program and, thus, it is impossible without a single date to determine, even assuming he is alleging an independent violation, whether Furby's claim is time-barred. Notwithstanding the foregoing, the current state of the record does not permit us to determine if this claim is barred as a matter of law. We need not resolve this issue, however, because, as discussed below, Furby's failure to state a *prima facie* case of disability discrimination warranted the district court's grant of summary judgment as to Furby's MHCRA claim.

---

**8.** Furby filed a complaint against UAW on June 17, 1994, *i.e.*, within the applicable statute of limitations period. However, he did not amend his complaint to join Chrysler until August 30, 1994, after the statute of limitations had run.

**9.** To allege a continuing violation, Furby would necessarily have to argue that the initial violation was Chrysler's discriminatory discharge of him and that that violation continued with Chrysler's repeated refusals to readmit him into the Apprenticeship Program. This is not a continuing violation case: Furby was dismissed from the Apprenticeship Program as a result of *one* act; that he sought reentry into the program on repeated occasions thereafter (and as late as 1995) did not revive each time the expired statute of limitations period. Furby's June 21, 1991, dismissal from the Apprenticeship Program required that he file a civil action grieving that dismissal within three years. He did not. Thus, Furby must argue that Chrysler's refusal to readmit him was an independent violation.

### 3. Basis for MHCRA Violation

▮ Under Michigan law, an employer is prohibited from either (a) failing or refusing "to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position," or (b) "discharg[ing] or otherwise discriminat[ing] against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position." MICH. COMP. LAWS ANN. § 37.1202(1) (1995). A perceived disability, even if not one in fact, is a "handicap" within the meaning of MICH. COMP. LAWS ANN. § 37.1202(1). *See* MICH. COMP. LAWS ANN. § 37.1103(e)(iii) (noting that a claim may lie for discrimination that results from "[b]eing regarded as having a determinable physical or mental characteristic"); *Merillat v. Michigan State Univ.*, 207 Mich.App. 240, 523 N.W.2d 802, 805 (Mich. Ct.App.1994) ("Defendants' perception of plaintiff as mentally unstable falls within the amended statutory definition of 'handicap.' "). To state a *prima facie* case of disability discrimination under the MHCRA, a plaintiff must prove that: (1) he is disabled within the meaning of MICH. COMP. LAWS ANN. § 37.1103(e); (2) that his disability is unrelated to his ability to perform his job duties; and (3) that he suffered an adverse employment action. *See Casteller v. Pepsi–Cola Metro. Bottling Co., Inc.*, 24 F.Supp.2d 782, 786 (E.D.Mich.1998).[10]

▮ Considering all facts and inferences in the light most favorable to Furby, Furby cannot state a *prima facie* case of discrimination. Furby's amended complaint alleges in the alternative both that Chrysler perceives Furby to have a handicap ("general anxiety disorder and/or the status of being overly nervous")—which, pursuant to MICH. COMP. LAWS ANN. § 37.1103(e) may provide an actionable claim under the MHCRA—and that, even though Furby does not believe that he suffers from a handicap, that "the proofs may establish that he does have a handicap and/or that he may need accommodation for purposes of employment."[11] Furby's disability, assuming he in fact suffers from one, does interfere with his ability to perform his job, but he argues that with reasonable accommodation by Chrysler, he would be able to perform successfully.[12]

Furby's difficulty stems from his inability to make a showing of the third requirement. While it is undisputed that Furby was discharged, at no point in his complaint, in his opposition to Chrysler's motion for summary judgment, or in his affidavit does he allege even one specific instance in which he sought reentry into the Apprenticeship Program and was denied by Chrysler. Never does he cite a particular date on which he applied (or was denied) or a specific person with whom he spoke about reentry into the Apprenticeship Program. Furby's amended complaint provides nothing more than a single, bare allegation that he "was

---

10. Some courts require a showing of a fourth element—proof of discriminatory intent by the employer—to state a *prima facie* case under the MHCRA. *See, e.g., Brown v. Sprint*, 891 F.Supp. 396, 399 (E.D.Mich.1995) (citations omitted).

11. Chrysler's lone comment concerning Furby's "overly nervous" behavior is insufficient to meet his burden of demonstrating that Chrysler perceived him to be disabled.

12. As already noted, Furby does not believe that he is in fact handicapped. However, he argues that even assuming he is, he nevertheless would be able to perform his job duties if Chrysler provided him with "a fairly accepting, benign, supportive environment."

removed from and regularly denied reentry into the skilled trades program because of a policy of handicap discrimination." Furby points to no evidence that Chrysler even knew of his alleged disability; as a practical matter, it is unclear how Chrysler could have been put on notice of a disability (and thus, taken an adverse action because of that disability) that, even today, Furby argues he does not have.[13] While it is true that a party need not prove its entire case to survive summary judgment, it must set forth more than a "mere existence of a scintilla" of evidence. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Furby does not. Furby's failure to set forth any evidence to create an issue of material fact on the question of whether he suffered an adverse employment action would permit a district court to grant summary judgment on this claim.

### B. Bullard–Plawecki Employee Right to Know Act

At a May 1999 bench trial, Furby argued that his December 6, 1996, employment termination was the result of false information that was contained within his personnel record.[14] He alleged that he was falsely accused by his supervisor, Del Gillenwater, of both reporting to his workstation five minutes after the shift had begun and leaving that workstation without authorization once he arrived. Furby testified, but Gillenwater did not. At the conclusion of the trial, the district court found in favor of Chrysler, noting that Furby had failed to demonstrate that

the information contained within his personnel record was false.

We review a district court's findings of fact to determine if they are clearly erroneous. *See United States Dep't of Labor v. Cole Enters., Inc.,* 62 F.3d 775, 778 (6th Cir.1995). We will conclude that a district court's factfinding is clearly erroneous "only when, although there may be some evidence to support the finding, 'the reviewing court is left with the definite and firm conviction that a mistake has been committed.'" *Johnson v. Jones,* 149 F.3d 494, 499 (6th Cir.1998) (quoting *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson,* 470 U.S. at 573–74, 105 S.Ct. 1504. We review *de novo* conclusions of law, *see Cole Enters.,* 62 F.3d at 778, and questions of statutory construction, *see United States v. Kassouf,* 144 F.3d 952, 955 (6th Cir.1998).

■ Under Michigan law, "[i]f either the employer or the employee *knowingly* places in the personnel record information which is false, then the employer or employee, whichever is appropriate, shall have remedy through legal action to have that information expunged." MICH. COMP. LAWS ANN. § 423.505 (emphasis added). Violation of this provision creates

---

**13.** We have found that a plaintiff failed to establish a *prima facie* case of disability discrimination where there was no evidence that the employer-decisionmaker had knowledge of the plaintiff's condition. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1181 (6th Cir.1993).

**14.** Although Furby filed his amended complaint on October 22, 1996, the facts concerning his December 6, 1996, employment termination nevertheless were at issue during the May 1999 bench trial. Apparently, the district court in its final pretrial order expanded the scope of the issues to be litigated at trial to include events that postdated Furby's complaint.

a cause of action under which the aggrieved party may seek compliance with BPERKA. *See* MICH. COMP. LAWS ANN. § 423.511. Furby's principal argument at trial was that because his personnel record contained information concerning Furby's deficiencies (and Chrysler's disciplinary action against him) and because Furby continually denied any wrongdoing, then all such information must be deemed false and he, therefore, should be entitled to both damages and removal of the "false" information. Furby's appeal focuses only on information in his file concerning the December 1996 encounter with Gillenwater.

The district court had ample evidence in the record to support its finding.[15] Several of Furby's co-workers testified, and each stated that the events as reflected in Furby's personnel record were consistent with their recollections of the facts. The district court concluded on the basis of this testimony, and on a finding that Furby's testimony was not credible, that Furby failed to demonstrate that the adverse information contained within his personnel record was false.

## III.  CONCLUSION

Accordingly, we AFFIRM the district court's grant of partial summary judgment and the district court's judgment in favor of Chrysler on Furby's BPERKA claim.

---

15.  Furby also suggests that the district court erred by limiting his ability "to admit into evidence all of the Chrysler personnel records pertaining to him for the limited purpose of showing the false information which he desired to challenge." We find no error. The district court permitted Furby to introduce excerpts of relevant records on the question of his alleged wrongdoing, and additional evidence on this question would likely have been cumulative.