*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF THORNTON JACKSON, JR., by
LOIS JACKSON, Personal Representative, and
JEREMIAH WEATHERLY,

      Plaintiffs-Appellants,

v

36TH DISTRICT COURT,

      Defendant-Appellee.

UNPUBLISHED
September 3, 2019

No. 343774
Wayne Circuit Court
LC No. 16-012009-CD

Before: BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

After employing plaintiffs, Thornton Jackson, Jr.,[1] and Jeremiah Weatherly, as bailiffs for more than three decades, defendant, 36th District Court, terminated their employment in 2016. Plaintiffs subsequently filed a complaint asserting that defendant had terminated them because of their age and disabilities in violation of the Elliot-Larsen civil rights act (ELCRA), MCL 37.2101 *et seq.*, and the people with disabilities civil rights act (PWDCRA), MCL 37.1101 *et seq*. Defendant moved for summary disposition on grounds that plaintiffs could not establish a prima facie case of age discrimination and that neither plaintiff was disabled for purposes of the PWDCRA. The trial court granted defendant's motion, and plaintiffs appealed. We affirm.

## I. RELEVANT FACTS AND PROCEDURE

At the time of the events underlying this appeal, defendant employed only three bailiffs, plaintiffs and non-party Robert Rhue; all three were in their 80s. Historically, defendant's

---

[1] Thornton Jackson, Jr., died during the pendency of this appeal, after which this Court granted appellants' motion to substitute the personal representative of Jackson's estate in his stead. *Thornton Jackson, Jr v 36th District Court*, unpublished order of the Court of Appeals, entered August 13, 2019 (Docket No. 343774).

-1-

bailiffs held office "until death, retirement, resignation, or removal from office by the court for misfeasance or malfeasance in office." MCL 600.8322(1) and (2). Vacancies in the office of bailiff established under MCL 600.8322(1) and (2) were not filled. *Id*. In 2015, the Legislature passed 2015 PA 132, eff. December 29, 2015, which amended MCL 600.8322 to allow the court to also remove bailiffs "for inability to perform essential functions of the office[.]" Soon after passage of the bill, defendant scheduled physical examinations for all three of its bailiffs to take place after the amendment's effective date and to determine plaintiffs' fitness to perform the essential functions of the office of bailiff. Defendant also provided the examining physician with a copy of the job description for bailiffs.

According to the bailiff job description, a bailiff's primary duties and responsibilities include serving individuals with various court documents; serving summons and complaints and working with local law enforcement to execute writs of eviction; repossessing furniture, cars, and appliances on claim and delivery orders, gaining access by forceful entry when necessary; and operating a motor vehicle in performing their assigned duties. Bailiffs must also "[o]btain[] and maintain[] all required state licenses and certifications necessary to perform the functions of Bailiff." Among the qualifications for the job of bailiff is the "[p]hysical ability to frequently perform [the] essential physical functions of the job, including, but not limited to lifting[,] moving furniture, appliances and other objects, and climbing stairs . . . ." They also "[m]ust possess a valid Michigan motor vehicle operator's license and be able to qualify for an unrestricted concealed weapons permit."

Based on Jackson's medical history and physical examination, examining physician Vanessa Robinson, M.D., concluded that Jackson was not fit to perform the duties of bailiff. She reported in a letter to defendant that Jackson's examination was "remarkable for the continuous use of oxygen by nasal cannula and abnormal lung findings[,]" and that Jackson reported a history of "Emphysema, Congestive Heart Failure and Sarcoidosis." Defendant subsequently informed Jackson that, based on the results of his physical examination, it was removing Jackson from office "for inability to perform the essential functions of the office."

Dr. Robinson found Weatherly's physical examination unremarkable, but recommended a "functional capacity exam to determine the ability to lift and move furniture, appliances, and other objects as well as stair climbing," and neuropsychiatric testing "to determine if there are any memory deficits." The functional capacity evaluator reported, among other things, that Weatherly met the strength requirements of light work, showed some capacity for medium work, and could occasionally climb stairs as long as he could hold onto at least one handrail. Due to Weatherly's poor balance, the evaluator thought it unlikely that he could carry objects up and down stairs. In addition, the evaluator suspected that Weatherly had vision problems, and recommended a formal vision test. The vision test revealed that Weatherly was "visually impaired secondary to glaucoma," and that his "best corrected visual acuity is 20/40-2 with the right eye and 20/500+2 with the left eye." Although Weatherly met the vision requirements for driving, "defects in his vision field" required further assessment to determine his capacity to compensate for such defects. Further testing revealed that Weatherly exhibited slow reaction time and poor scanning skills, was thought likely impaired as to cognition and/or multi-tasking skills, and was advised to discontinue driving. As with Jackson, defendant subsequently informed Weatherly that, based on the results of his testing, it was terminating his employment for "inability to perform the essential functions of the office." Rhue passed both his physical

examination and functional capacity examination and remained a bailiff until his sudden death in December 2016.

Plaintiffs filed a lawsuit as indicated, and both they and defendant's chief judge, Nancy Blount were deposed. Jackson arrived at his deposition with a wheelchair and an oxygen tank. He identified his duties as serving summons and executing writs of restitution and said he had a four-man crew[2] that helped with evictions. He acknowledged that he could not lift and move furniture or appliances during his last two years at the court, but insisted that he had never had to do any such lifting and carrying. He explained that he had been on oxygen for a couple of years, that he used it about 12 hours a day, and that he used a nebulizer and an inhaler twice a day each. Jackson said he had difficulty breathing if he walked more than half a block or climbed stairs, admitted that going to and from the restroom during a break in the deposition winded him, and said that he used his wheelchair as much as he can. He explained that although he had used the wheelchair while he still worked at the court, he was just "putting on a show" because he wanted the attention that came from being thought disabled. Jackson surmised that he could still forcibly open a door with a crowbar if his crew carried him up to the door in his wheelchair.

Weatherly's testimony regarding his understanding of the duties of a bailiff was similar to Jackson's understanding. He acknowledged that his son had driven him around at work during the last five years of his employment with the court, but insisted that it was to "save money," and that he could, and did, drive whenever necessary. He could not remember whether a doctor told him to discontinue driving, but said he had a valid driver's license and did not have a problem driving. He also said he had a valid concealed carry permit, which he had recently renewed. Weatherly conceded, however, that the renewal process involved neither a vision test nor a shooting test.

In her deposition, Chief Judge Blount stated that she decided to terminate plaintiffs after reviewing MCL 600.8322 as amended by 2015 PA 132, the job description for bailiffs, Dr. Robinson's letter, Jackson's medical records, and the results of Weatherly's functional capacity and vision tests. The judge acknowledged that she had known for more than two decades that Jackson worked with a crew. She said that hiring a crew had been a common practice among bailiffs and that she had not disciplined anyone for this practice since becoming chief judge in 2013. However, she insisted that what amounted to subcontracting the bailiff's duties to crewmembers was not an accommodation. With regard to Weatherly, Judge Blount testified that his eye condition precluded him from fulfilling the driving requirement of the bailiff's job description. As with Jackson, the judge said that subcontracting the driving requirement to a permanent chauffer was not an accommodation, and stated that by having his son drive him at work, Weatherly was not performing an essential job duty.

---

[2] Although Jackson testified that he normally had a set crew he would hire to work for him, Weatherly said that he used "a lot of different guys" that he would pick up at Capuchin Kitchen and pay them cash to help him. Among Weatherly's crew was his son, who had worked for defendant as a bailiff before he "got relieved."

As indicated, defendant filed a motion for summary disposition, which plaintiffs opposed with arguments substantially the same as those advanced on appeal. After hearing oral arguments, the trial court issued a written opinion largely adopting defendant's argument, and a corresponding order that granted defendant's motion for summary disposition. This appeal followed.

## II. ANALYSIS

Plaintiffs argue that the trial court erred in granting defendant summary disposition of their claims for discrimination based on their disabilities and their age. We disagree.

### A. STANDARD OF REVIEW

Defendant brought its motion for summary disposition pursuant to MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a circuit court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5)." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The moving party may satisfy its burden under MCR 2.116(C)(10) by "submitting affirmative evidence that negates an essential element of the nonmoving party's claim, or by demonstrating to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (quotation marks, brackets, and citation omitted). If the moving party meets its burden, "[t]he burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden*, 461 Mich at 120.

### B. PEOPLE WITH DISABILITIES CIVIL RIGHTS ACT

To establish a prima facie case of discrimination under the PWDCRA, a plaintiff must show that (1) he is "disabled" as defined by the statute, (2) the disability is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute. See *Kerns v Dura Mech Components, Inc*, 242 Mich App 1, 12; 618 NW2d 56 (2000) (*Kerns* addresses alleged violations of the handicappers' civil rights act [HCRA], MCL 37.1101 *et seq*., which 1998 PA 20 renamed "persons with disabilities civil rights act" [PWDCRA]). Unless a plaintiff establishes the first two elements, there is no need to consider whether a defendant discriminated against the plaintiff based on his or her disability. See *Peden v City of Detroit*, 470 Mich 195, 205; 680 NW2d 857 (2004) (indicating that a plaintiff must first prove that he or she is a "qualified person with a disability" protected by the PWDCRA before demonstrating employer discrimination in one of the ways set forth in MCL 37.1202.").

In the employment context, MCL 37.1103(d) defines "disability" in relevant part as

(*i*) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

-4-

(A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job . . . .

" 'Unrelated to the individual's ability' means, with or without accommodation, an individual's disability does not prevent the individual from . . . performing the duties of a particular job or position." *Peden*, 470 Mich at 203 (quoting MCL 37.1103(*l*)(i)).

It is undisputed that plaintiffs have physical characteristics "which may result from disease, injury, congenital condition of birth, or functional disorder." MCL 37.1103(d)(*i*). Assuming for the sake of argument that plaintiffs' disabilities limit one or more of their major life activities, MCL 37.1103(d)(*i*)(A), the dispositive issue is whether the disabilities, with or without accommodation, prevent plaintiffs from performing the duties of bailiff.

By asserting in their brief to this Court that they have "accommodated themselves," plaintiffs concede that they are unable to perform the duties of bailiff without aid of some kind. The employer's duty under the PWDCRA to make reasonable accommodations is "limited to alteration in physical structures and modification of peripheral job duties." *Mauro v Borgess Med Ctr*, 886 F Supp 1349, 1355 (WD Mich, 1995), citing *Ashworth v Jefferson Screw Prod, Inc*, 176 Mich App 737, 744; 440 NW2d 101 (1989); see also *Kerns*, 242 Mich App at 16. Plaintiffs' own deposition testimony indicates that they can perform the duties of bailiff only if defendant modifies or adjusts those duties, or assigns them to someone else, or allows plaintiffs to assign them to someone else, such as members of their respective crews. Defendant's obligation under the PWDCRA to accommodate does not reach that far. Because plaintiffs' disabilities, with or without accommodation, prevent them from performing the duties of bailiff, they are not disabled for purposes of the PWDCRA and, therefore, they are not entitled to its protections. MCL 37.1103(d)(*i*)(A).

Plaintiffs rely on *Peterson v Consumers Energy Co*, 2012 ACO # 31, a decision issued by the Workers' Compensation Appellate Commission (now the Michigan Compensation Appellate Commission), to argue that under Michigan law, vocational evidence is necessary to translate medical evidence into a vocational assessment. Because defendant presented no vocational evidence, its medical evidence was not a sufficient basis on which to conclude that plaintiffs were unable to perform the essential functions of their job. Plaintiffs' reliance on *Peterson* is misplaced. We are not bound by decisions issued by the Michigan Compensation Appellate Commission. Further, the *Peterson* decision involves a claim brought under the Workers' Disability Compensation Act (WDCA), MCL 418.101 *et seq.*, which defines "disability" differently than does the PWDCRA. The WDCA defines "disability" in terms of the loss of wage earning capacity in the range of work suitable to the employee's qualifications and training. MCL 418.301(4). Given the various elements involved in this broad definition of disability, it makes sense to require vocational proofs where issues involve a plaintiff's training and experience, the suitability of jobs given that training and experience, and whether the plaintiff's injuries preclude his or her performance of all suitable jobs. However, such issues are irrelevant to analysis of a claim under the PWDCRA. Plaintiffs cite no authority requiring vocational proofs for claims under the PWDCRA, nor does the relevant caselaw indicate that such proofs are required. See, e.g., *Peden*, 470 Mich 195.

Plaintiffs also contend that if defendant thought them disabled, defendant should have initiated a conversation about accommodation. To the extent that plaintiffs imply a claim for failure to accommodate, such claim fails as a matter of law. A person with a disability may allege a failure to accommodate claim under the PWDCRA "only if the person with a disability notifies the person in writing of the need for accommodation within 182 days after the date the person with a disability knew or reasonably should have known that an accommodation was needed." MCL 37.1210(18). It is undisputed that plaintiffs did not make a written request for accommodation. Absent a written request for accommodation, a plaintiff alleging a failure to accommodate claim cannot prevail. *Petzold v Borman's, Inc*, 241 Mich App 707, 716; 617 NW2d 394 (2000).

Relying on federal cases involving claims brought under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, plaintiffs next argue that, because defendant failed to engage in a discussion about accommodation, defendant bears the burden of proving that no reasonable accommodation existed. Plaintiffs are incorrect. Not only did they not bring a claim under the ADA, but even if they had, they would still have to establish that they are "qualified individual[s]" under the ADA. *McBride v BIC Consumer Prod Mfg Co, Inc*, 583 F3d 92, 97 (CA 2, 2009). "[F]or purposes of the ADA, a 'qualified individual' is 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.' " *Id*. at 96, quoting 42 USC 12112(b)(5)(A). The Michigan Supreme Court has quoted with approval this Court's observation that "[t]he ADA's 'qualified' language and the PWDCRA's 'disability' language require essentially the same analysis . . . [and] the result under either statute is the same." *Peden*, 470 Mich at 216-217 (quotation marks and citation omitted). Plaintiffs having failed to prove that they are disabled for purposes of the PWDCRA, there is no reason to think that they could establish that they are "qualified individuals" under the ADA.

Because plaintiffs' disabilities relate to their abilities to perform the duties of the bailiff position with or without accommodation, they cannot establish a prima facie case of discrimination under the PWDCRA. MCL 37.1103(d)(*i*); *Kerns*, 242 Mich App at 12. Accordingly, the circuit court did not err in granting defendant summary disposition of plaintiffs' PWDCRA claim.

## C. ELLIOT-LARSEN CIVIL RIGHTS ACT

The ELCRA prohibits employers from discharging or discriminating against individuals "with respect to employment, compensation, or a term, condition, or privilege of employment" because of age. MCL 37.2202(1)(a). A plaintiff may prove unlawful discrimination based on direct evidence or indirect evidence. *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. (quotation marks and citation omitted).

Plaintiffs allege in the factual section of their brief to this Court that they have direct evidence of age discrimination in the form of a nonnotarized affidavit from DeAngelo Malcolm, staff representative of the union that formerly represented bailiffs, stating that Carolyn Bogerty, defendant's human resources director, told him in December 2015 or January 2016 that

defendant sent plaintiffs for tests "because they are old." However, because the affidavit is not notarized, it does not qualify as a proper affidavit. See *Holmes v Mich Capital Med Ctr*, 242 Mich App 703, 711-712; 620 NW2d 319 (2000) (determining that a document lacking any indication that its contents have been confirmed "by oath or affirmation before a person authorized to issue the oath or authorization" is not a valid affidavit). In addition, plaintiffs have presented no evidence to establish that Bogerty's alleged statement was related to the decision-making process,[3] and there is no evidence that anyone who was involved in the decision communicated to Bogerty the basis for the decision. Moreover, both plaintiffs testified in their depositions that they never heard any comments about age, suggesting that Bogerty's alleged comment was not part of a pattern of biased comments. For these reasons, the alleged comment, if made, was a "stray remark" at best, and stray remarks do not constitute direct evidence of discriminatory intent. See *Sniecinski v Blue Cross and Blue Shield of Mich*, 469 Mich 124, 136 n 8; 666 NW2d 186 (2003).[4]

To establish a prima facie case of age discrimination indirectly, plaintiffs must present evidence that they belong to a protected class, they suffered an adverse employment action, they were qualified for the bailiff position, and the job was given to someone else "under circumstances giving rise to an inference of unlawful discrimination." *Hazle*, 464 Mich at 462. Once plaintiffs establish a prima facie case and the presumption of discrimination arises, the burden shifts to defendant to prove a non-discriminatory reason for its decision to terminate plaintiffs. If defendant successfully rebuts the presumption of discrimination, the burden shifts again to plaintiffs to prove that discrimination was a motivating factor in defendant's termination of their employment. *Id*. at 463-465.

It is undisputed that plaintiffs are members of a protected class and that they suffered an adverse employment action. However, plaintiffs cannot go forward with their age discrimination claim because they cannot establish that they were qualified for the bailiff job. As discussed at length above, medical evaluations revealed that neither Jackson nor Weatherly was capable of performing the essential functions of the bailiff's position himself, with or without accommodation.

---

[3] Defendant presented a notarized affidavit from Bogerty, supported by attached employment records, in which she stated that she made no such statement and did not start working for defendant until March 7, 2016, well after defendant made and communicated to plaintiffs its decision to send all its bailiffs for physical examinations.

[4] As the *Sniecinski* Court explained:

> Factors to consider in assessing whether statements are "stray remarks" include: (1) whether they were made by a decision maker or an agent within the scope of his employment, (2) whether they were related to the decision-making process, (3) whether they were vague and ambiguous or clearly reflective of discriminatory bias, (4) whether they were isolated or part of a pattern of biased comments, and (5) whether they were made close in time to the adverse employment decision. *Sniecinski*, 469 Mich at 136 n 8.

Further, even if plaintiffs had established a prima facie case such that the presumption of discrimination arose, defendant presented evidence to rebut the presumption. Plaintiffs' fitness for duty became relevant only with the 2015 amendment of MCL 600.8322 permitting removal of bailiffs from office "for inability to perform essential functions of the office." Soon after passage of the bill, defendant scheduled all three of its bailiffs for physical examinations to determine their ability to perform the essential functions of their jobs. Judge Blount testified that the decision to remove plaintiffs from their position was based solely on comparing the results of those examinations and the recommended follow-up testing with the bailiff's job description. Defendant's insistence that age was not a motivating factor in its decision finds additional support in the fact that the third bailiff, Rhue, who was in the same protected class as plaintiffs, passed his physical examination and functional capacity test, kept his job, and served as bailiff until his sudden death in December 2016.

Plaintiffs also cannot prove that their duties went to someone else "under circumstances giving rise to an inference of unlawful discrimination." *Hazle*, 464 Mich at 462. Plaintiffs assert that defendant required none of its court officers to take a physical examination. This assertion overlooks the fact that defendant's decision to require all of its bailiffs to undergo physical examinations was in response to the 2015 amendment of MCL 600.8322 allowing defendant to remove bailiffs from office "for inability to perform essential functions of the office[.]". This statute applies only to bailiffs in the 36th district court, it does not apply to court officers. In light of the legal context, the fact that defendant did not require court officers to undergo physical examinations does not give rise to an inference of unlawful discrimination. Plaintiffs also assert that all of the court officers to whom the duties of bailiff fell were under 70 years of age. While one might assume that this is true, plaintiffs provide no evidence in support of their conclusion. "Parties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Bennett v Detroit Police Chief*, 274 Mich App 307, 319; 732 NW2d 164 (2006).

In conclusion, plaintiffs' age discrimination claim fails because they cannot establish a prima facie case giving rise to a presumption of discrimination. Even if the presumption of unlawful age discrimination did arise, the record shows that defendant presented evidence rebutting the presumption and establishing that it based its termination decision on plaintiffs' health conditions. Plaintiffs presented no evidence that defendant's non-discriminatory reason was pretextual or that age was a motivating factor in defendant's decision.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron